UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| HERMAN GREINSTEIN, Individually and For Others Similarly Situated, | Case No. 2:18-cv-00208-Z-BR |
| v. | Jury Trial Demanded |
| GRANITE SERVICES INTERNATIONAL, INC. and FIELDCORE SERVICES SOLUTIONS, LLC | FLSA Collective Action |

**PLAINTIFF'S RESPONSE TO
SHOW CAUSE ORDER (DOC. 124)**

While the immediate focus is on the declarations offered in support of conditional certification, the underlying issue is whether Greinstein and his counsel had a reasonable basis for alleging Defendants imposed an improper pay practice on their EHS workers. Greinstein alleges Defendants failed to pay their EHS workers on a "salary basis" because Defendants paid EHS workers additional compensation that violated the reasonable relationship test and because Defendants deducted from workers' alleged salaries. The contentions underlying the original complaint and all subsequent filings were well supported by Greinstein and the opt-ins' good faith recollections, the records in their possession, and the records later produced by Defendants for settlement purposes, and by analysis performed by plaintiffs' experts for settlement purposes. They were not knowingly false when made nor was there any intent to deceive or mislead the Court.

The declarants admittedly did not have perfect recall of every paycheck, but they are not prohibited from offering testimony based on their understanding. The declarations were based on their understanding of Defendants' pay practice and their belief they "would have" been treated according to that practice. Declarants had an honest belief the information presented was accurate and counsel—having seen Defendants paid employees similarly in the data produced for mediation— had no reason to doubt this would have happened. Based on the information available at the time of filing, these beliefs were honest and reasonable. The evidence suggested (and still supports) that

1

Defendants did not pay a class of their EHS workers on a "salary basis" as required by the FLSA because of additional compensation received by the Putative Class Members that violates the reasonable relationship test and because Defendants deducted from these workers alleged salaries. While Defendants obviously assert their pay practice is legal, this is a dispute about the merits of the case—not a question of perjury or sanctions.

Importantly, Defendants do not deny they made some deductions from their EHS professionals' alleged salaries (because they can't). Instead, Defendants blame the plaintiffs for any improper deductions. Doc. 38 at *6 ("If Greinstein failed to [enter 'unproductive time'], and Greinstein did not subsequently report the error so that it could be corrected, he may have been paid according to how he entered his time."). But Defendants have been silent as to any other deductions of any other EHS employees. .

Greinstein and his Counsel can provide the Court with evidence showing:

- Defendants made deductions to Greinstein's salary;

- An expert statistician and consulting firm verified Defendants made deductions to other straight time for overtime employees;

- Class Counsel was aware of Greinstein's deductions and deductions to other straight time for overtime employees before the filing of the declarations of Jones, White, and Campo.

- Class Counsel communicated with Jones, White, and Campo in the completion of the declarations.

- Jones, White, and Campo understood they were paid hourly and would only be paid for hours worked.

- Class Counsel's knowledge of Defendants' pay practices and deductions, along with Jones', White's, and Campo's belief (albeit mistaken) that they were only to be paid for hours worked, forms a reasonable basis for Plaintiffs' and Class Counsel's actions.

- Jones', Campo's, and White's statements are not perjurious.

- Class Counsel's actions do not violate Rule 11.

Class Counsel have additional information regarding deductions, verified by Class Counsel's experts, that can only be provided if Defendants permit the Court to inspect the pay records and summary of pay records. Doc. 89 at ¶ 4. But Greinstein's inability to submit certain evidence does not erase Class Counsel's knowledge of Defendants' pay practices. And, as shown in this Response, Greinstein, the declarants, and Class Counsel had a reasonable basis for submitting the statements at issue.

**1.      Defendants Made Improper Deductions to Greinstein's "Salary."**

In his Second Amended Complaint, Greinstein alleges Defendants paid EHS personnel the same hourly rate for all hours worked, including those in excess of 40 in a week. Doc. 87 at ¶ 10. He alleges he was not paid a salary, and if he worked less than 40 hours, he was paid only the hours he worked. *Id.* at ¶¶ 37, 41. The objective evidence confirms this assertion: Defendants only paid Greinstein 8 hours during the workweek ending on October 16, 2016. *See* Ex. 2, Greinstein's pay stub for the week ending on October 16, 2016; Doc. 97-1; Doc. 97-3. These pay records were in Defendants' possession at the time of their Answer to the Second Amended Complaint (filed on June 25, 2020) and yet Defendants denied Greinstein was paid less than 40 hours in a workweek. Doc. 96 at ¶¶ 37,41. Thus, while denying demonstrably true allegations in Greinstein's Second Amended Complaint, Defendants accuse Greinstein of relying on "demonstrably false" statements by Jones, Campo, and White. Doc. 118.

But, again, this should not be an issue of perjury or involving Rule 11. Instead, it reflects the basic conflict inherent in any litigation: the positional statements each side seeks to prove before the ultimate trier of fact.[1] That some evidence exists which mitigates or even contradicts the theory upon which a claim or defense is made does not, alone, suggest a lack of merit or fraud. It merely becomes an issue of credibility for the jury. Here, Greinstein alleges the existence of a pay practice wherein the Defendants made improper deductions and paid him substantial compensation that is not reasonably related to his base pay. Doc. 87. Defendants' own records suggest he may be able to prove his action.

---

[1] Whether Defendants can establish that an employee was paid a salary and his duties ultimately satisfy an exemption is a question of law. *See Lasley v. Acad., Ltd.*, CV 18-0347, 2019 WL 6840582, at *3 (S.D. Tex. Aug. 30, 2019), adopted, 2019 WL 4727612 (S.D. Tex. Sept. 27, 2019).

This objective evidence substantiates the basis for his claims and those of the Putative Class Members. That Greinstein or any proposed class member may be shown not to be entitled to relief does not retroactively invalidate this action.

2.      **Greinstein's Statisticians Verified Deductions in Defendants' Pay Practice.**

Class Counsel obtained a sampling of payroll records from Defendants in April of 2020. 89 at ¶ 4. Class Counsel promptly engaged EmployStats (https://employstats.com), a firm of economic experts specializing in wage and hour analysis. *Id.* In April and May of 2020, EmployStats analyzed the data provided by Defendants. Based on Employstat's opinions and Greinstein's records, Class Counsel had a reasonable basis to believe Defendants maintained a common practice of not paying a guaranteed salary to its straight time for overtime EHS employees. *Id.*; Ex. 1, at ¶ 12. And paying these employees based on the hours they actually work. *Id.*

With this supported belief that a violative pay practice existed, statements made by the declarants, based on their best recollections, that they suffered deductions were also reasonable when made. That Defendants may ultimately demonstrate that the practice does not violate the FLSA, that the proposed class is not similarly situated, or that any opt-in should not be part of a class, does not mean that the statements or the claims were perjurious or falsely made.

3.      **Stephen Jones' Declaration was not Perjurious.**

Defendants questioned Stephen Jones's declaration, suggesting his statements were false because his payroll does not reflect being paid for fewer than 40 hours in a week. But as these records show, Jones never worked fewer than 40 hours. So nothing controverts his belief that had he worked under 40 hours, he would only be paid for the hours he worked, that he was paid hourly, and that he fits within the proposed class. Jones' (and all the Putative Class Members) paystubs listed their pay rate as hourly.[2] Jones worked over 60 hours in almost every workweek with Defendants.[3] He was paid

---

[2] *See* Docs. 97-3; 97-4.
[3] Jones' "salary" of $1,840 per week is not reasonably related to his actual earnings based on the total hours he worked. Jones' pay stubs confirmed he worked as many as 98 hours in a week. This equates to a ratio of 1 (alleged "salary) to 2.2 (actual earnings), far in excess of the Department of Labor guidelines of 1 to 1.5.

4

the same hourly rate for every hour he worked.[4] His declaration was not knowingly false when he made it. Jones testified to the best of his knowledge based on his understanding at the time of how he would have been paid by Defendants.

**4.     White's and Campo's Declarations Were Not Perjurious.**

Neither White's nor Campo's declaration constitutes perjury. Byron White signed his consent to be an opt-in plaintiff on August 4, 2020. Emilio Campo signed his consent on August 26, 2020. Both these EHS employees were screened thoroughly. Ex. 1, at ¶ 14.

White's and Campo's declarations were based on their recollection of Defendants' pay practice. Defendants refused to provide the payroll records of all EHS employees despite multiple requests. Despite the fact that Defendants always possessed these records, the first time Class Counsel was provided with any pay records for White and Campo was a <u>sample</u> attached to Defendants' Motion for Leave to File a Sur-Reply. Doc. 114. The complete payroll records for White and Campo were not produced until September 14, 2020 (that is, after the declarations were submitted).

White's and Campo's statements were vetted by an attorney with knowledge of Defendants' pay practices, Greinstein's records, the data Defendants produced for mediation, and Employstat's opinions. Ex. 1, at ¶ 14. Both White and Campo had genuine knowledge of Defendants and their pay practice. *Id.* White and Campo knew this pay practice was applied throughout the nation. *Id.* While they did not have the benefit of reviewing their pay records,[5] both confirmed the information contained in their declarations was true and correct to the best of their knowledge. Based on the opinions presented by EmployStats, the in-depth interview of White and Campo, and Greinstein's records, Class Counsel had no reason to doubt the veracity of the statements made by White and Campo. Ex. 1, at ¶ 15.

---

[4] See Doc. 97-4.

[5] This is hardly unusual. "It is the employer's duty to keep records of the employee's wages, hours, and other conditions and practices of employment; the employer is in a superior position to know and produce most probative facts concerning the nature and amount of work performed[.]" *Trevino v. RDL Energy Servs., L.P.*, No. CV H-14-1936, 2016 WL 11477431, at *9 (S.D. Tex. July 21, 2016). "Employees seldom keep such records themselves; even if they do, the records may be and frequently are untrustworthy." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946).

**5.     Argument and Authorities.**

  **A. Declarants' statements are not perjurious.**

Perjury requires a "willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94 (1993); *see also Springer v. Coleman*, 998 F.2d 320, 322 (5th Cir. 1993) ("Under Texas law, a person commits perjury if the person makes a false statement under oath, with intent to deceive, and with knowledge of the statement's meaning"). "[W]hen attempting to show perjured testimony, the false or misleading nature of certain testimony cannot be established simply by pointing to contradictory testimony from other witnesses, inconsistencies within a witness's testimony, or conflicts between or among written statements and live testimony. Such matters go only to the weight of the evidence and the credibility of the witness." *Reynolds v. Davis*, 3:17-CV-2443-M-BN, 2020 WL 3239935, at *9 (N.D. Tex. May 18, 2020), adopted, 2020 WL 3214561 (N.D. Tex. June 15, 2020) (citing *Craig v. Director, TDCJ-CID*, No. 5:07cv167, 2013 WL 4711483, at *14 (E.D. Tex. Aug. 30, 2013)); *see Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 648 (S.D. Tex. 2010) ("Perjury is not established by mere contradictory testimony from witnesses or inconsistencies in a witness's testimony"); *Johnson v. City of Bastrop*, CV 15-2463, 2017 WL 3381340, at *4 (W.D. La. Aug. 3, 2017), *aff'd sub nom. Johnson v. Hollins*, 716 Fed. Appx. 248 (5th Cir. 2017) (unpublished) ("Mere inconsistencies in a witness's testimony and contradictory testimony from other witnesses is not sufficient to establish perjury").

That Defendants offered evidence, nearly two years into the case, which conflicts some statements in the declarations is, alone, insufficient to show perjury. Instead, for the declarations at issue to be perjurious, there would need to be some evidence that the declarants accurately recalled the facts, but willfully testified falsely; that they were aware the statements were false when made. There is no such evidence here. Even the contention that it is "inconceivable" that these declarants did not know that their statement were false are "not sufficient evidence to prove an absence of confusion, mistake, or faulty memory necessary to establish perjury." *B Choice Ltd. v. Epicentre Dev. Associates LLC*, CV H-14-2096, 2016 WL 3911123, at *20 (S.D. Tex. May 12, 2016), *adopted sub nom. Ltd. v. Epicentre Dev. Associates, LLC*, 2016 WL 3763268 (S.D. Tex. July 14, 2016); see Washington v.

Tanner, CV 13-6120, 2015 WL 13227943, at *15 (E.D. La. Dec. 11, 2015), adopted, 2016 WL 1253564 (E.D. La. Mar. 31, 2016) (rejecting contention prosecution "must have known" it was presenting perjured testimony because of conflicts between the testimony of other witnesses and inconsistences between prior statements).

The declarations were made by Jones, White, and Campo based on their recollections at the time, those few records (if any) in their own possession, and their understandings of how Defendants' pay practice applied, or could have applied, to their work. The statements regarding how they would have been paid were not knowingly false and should not be found to be perjurious, deceitful, or purposefully misleading.

### B. Class Counsel has not violated Rule 11(b)(3).

"In the Fifth Circuit, Rule 11 requires counsel to fulfill three requirements: (1) counsel must make a reasonable inquiry into the factual basis of any pleading, motion, or other paper; (2) counsel must make a reasonable inquiry into the law; and (3) counsel must not sign a pleading, motion, or other paper intended to delay proceedings, harass another party, or increase the costs of litigation." *Johnson,* 2017 WL 3381340, at *6 (citing *St. Amant v. Bernard*, 859 F.2d 379, 382 (5th Cir. 1988)). "Sanctions under Rule 11 may be appropriate if the Court finds that a document has been presented for an improper purpose, the claims or defenses of the signer are not supported by existing law or by a good-faith argument for an extension of change in existing law, or the allegations and other factual statements lack evidentiary support or are unlikely to do so after a reasonable opportunity for investigation." *Orchestrate HR, Inc. v. Trombetta*, 178 F. Supp. 3d 476, 498 (N.D. Tex. 2016), objections overruled sub nom., 3:13-CV-2110-KS-BH, 2016 WL 5942223 (N.D. Tex. Oct. 13, 2016) (internal citations omitted). "[L]ike a snapshot, Rule 11 review focuses upon the instant when the picture is taken—when the signature is placed on the document" and "imposes a standard of good faith and reasonable investigation as of the date of that signing." *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 874 (5th Cir. 1988).

"The task for the district court under Rule 11 … is only to decide whether an attorney has failed to conduct a reasonable inquiry into the law and the facts and comply with 'an objective standard

of reasonableness under the circumstances.'" *Trinity Gas Corp. v. City Bank & Tr. Co. of Natchitoches*, 54 F. App'x 591 (5th Cir. 2002). "Reasonableness is reviewed according to the 'snapshot' rule, focusing upon the instant the attorney affixes his signature to the document." *Smith v. Our Lady of the Lake Hosp., Inc.*, 960 F.2d 439, 444 (5th Cir. 1992). A sanction under Rule 11 is "an extraordinary remedy, one to be exercised with extreme caution." *Laughlin v. Perot*, No. 3:95–cv–2577–R, 1997 WL 135676, at *8 (N.D.Tex. Mar. 12, 1997).

As addressed above, Class Counsel conducted an extensive review of the available records and evidence, including the use of economic experts. At the time the statements were filed, there was ample reason to believe the claims had evidentiary support or would have support after a reasonable opportunity for investigation. While what the declarants believed would happen to them did not in fact happen, this does not establish that Counsel acted unreasonably. Greinstein showed, his Counsel have seen, and the experts they hired have confirmed, deductions from what Defendants allege to be EHS workers' "salaries." Nothing retroactively invalidated the reasonableness of the belief that Defendants imposed an improper pay practice on Greinstein and his proposed class of EHS workers. Under the snapshot test applicable to Rule 11, the filings and declarations complied with counsel's burden of good faith and reasonable investigation. No sanction should be imposed on Greinstein or his counsel because Defendants now offer pay records that conflict with the declarations.

**6.     Conclusion.**

To be clear, Greinstein, Declarants, and Class Counsel take their obligations to this Court seriously. Plaintiffs testified to the facts as they understood them to be and regarding what they believed "would have" happened. Counsel, having payrolls records, legal precedent, and consulted with economic experts, did not act unreasonably in believing the declarants were subjected to the same practice applied to other EHS employees.

Respectfully submitted,

By: */s/ Richard M. Schreiber*
    **Michael A. Josephson**
    Texas State Bar No. 24014780
    **Andrew Dunlap**
    Texas Bar No. 24078444
    **Richard M. Schreiber**
    Texas State Bar No. 24056278
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 751-0025
Fax: (713) 751-0030
mjosephson@mybackwages.com
adunlap@mybackwages.com
rschreiber@mybackwages.com

**AND**

**Richard J. (Rex) Burch**
Texas State Bar No. 24001807
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

**ATTORNEYS FOR PLAINTIFF**

### CERTIFICATE OF SERVICE

On November 4, 2020, I served a copy of this document on all registered parties and/or their counsel of record, via the Court's CM/ECF system.

                                */s/ Richard M. Schreiber*
                                Richard M. Schreiber