

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| HERMAN GREINSTEIN, individually and on behalf of others similarly situated, | § § § | |
| Plaintiff, | § § | |
| v. | § § | 2:18-CV-208-Z |
| FIELDCORE SERVICES SOLUTIONS, LLC, et al., | § § § § | |
| Defendants. | § | |

**U.S. DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FILED**

**NOV 2 0 2020**

**CLERK, U.S. DISTRICT COURT**
By _____
Deputy

## MEMORANDUM OPINION AND ORDER
## GRANTING AND DENYING IN PART
## PLAINTIFF'S RENEWED MOTION FOR CONDITIONAL CERTIFICATION

Before the Court are Plaintiff's Renewed Motion for Conditional Certification and Court-Authorized Notice (ECF No. 97) and Reply (ECF No. 113). Defendants have also filed a Response (ECF No. 104) and a Sur-Reply (ECF No. 118). The Court also has Plaintiff's Response (ECF No. 125) to the Court's Show Cause Order (ECF No. 124). For the following reasons, the Court GRANTS IN PART Plaintiff's Renewed Motion for Conditional Certification (ECF No. 97). Defendant's Motion for Extension of Time (ECF No. 120) is DENIED as moot.

**BACKGROUND**

This is an overtime compensation dispute arising under the Fair Labor Standards Act ("FLSA"). Defendants — FieldCore Services Solutions, LLC and Granite Services International, Inc.[1] — provide professionals who service customers in the fields of power generation, oil and gas, nuclear, and renewables. ECF No. 104 at 3. More specifically, Defendants' Environmental

---

[1] In April 2017, Granite Services converted to an LLC and changed its name to FieldCore Service Solutions International LLC. In August 2017, that entity transferred its U.S. operations and employees to Defendant FieldCore. ECF No. 104 at 3.

Health & Safety ("EHS") group ensures regulatory and safety compliance on projects at plants and facilities across the country. *Id.* FieldCore staffed most projects with at least one EHS Manager whose primary responsibility was to ensure onsite health and safety. *Id.*

Plaintiff Greinstein began working for Granite on August 22, 2016 as an EHS Manager. *Id.* at 6. In August 2017, Greinstein's employment (along with the employment of Granite's other U.S. employees) was transferred to FieldCore, where he remained employed until September 22, 2017. *Id.* During his employment, Greinstein alleges he was paid the same hourly rate for all hours worked including those in excess of forty hours in a single work week. ECF No. 97 at 2.

On November 2, 2018, Greinstein sued Defendants for alleged violations of the FLSA on behalf of himself and other similarly situated employees. Greinstein alleges Defendants misclassified EHS Managers as exempt from overtime compensation as well as paying employees the same hourly rate for all time worked including time over forty hours a week. Accordingly, Greinstein sought to conditionally certify a "collective action" under 29 U.S.C. § 216(b) of the FLSA. ECF No. 34.

Greinstein's first motion for conditional certification was denied because it was unclear whether other employees were similarly situated, but he was allowed some limited discovery to determine if a similarly situated group of employees existed. ECF Nos. 57, 58. The case was then stayed while the parties attempted to mediate this dispute. ECF No. 93. After settlement discussions failed, the case was re-opened. *Id.*

Since filing suit, three former EHS employees have opted-in as plaintiffs: (1) Stephen Jones, an EHS Manager who worked for Defendants in Kentucky and Massachusetts from March 2019 until May 2019; (2) Byron White, an EHS Manager who worked for Defendants in North Dakota from February 2019 until November 2019; and (3) Emilio Campo, an EHS Manager who

worked for Defendants in Iowa, Minnesota, and Wyoming from August 2019 until February 2020. ECF Nos. 97–2, 113–1, 113–2.

On July 24, 2020, Greinstein filed this renewed motion for conditional certification, requesting the Court conditionally certify the following putative class:

> All EHS employees of FieldCore and Granite Services who were paid the same hourly rate for all hours worked, including those hours in excess of 40 hours in a single work week, ("straight time for overtime") at any point in the past 3 years. ECF No. 97 at 1.

In response, Defendants argue they have fully complied with the FLSA. Specifically, Defendants argue Greinstein received a salary plus an hourly premium for working in excess of forty hours in a given week. ECF No. 104 at 21. Defendants argue this scheme is expressly permitted by FLSA regulations. *Id.* (citing 29 C.F.R. § 541.604(a)).

Defendants further contend Greinstein has failed to offer evidence that other members of a putative class exist or are similarly situated with respect to job duties or pay. *Id.* at 14–19. According to Defendants, Greinstein "fails to grapple with the varied roles and duties different EHS Managers perform on different job sites, for different types of projects (nuclear, hydro, wind, oil & gas, etc.), for differently sized projects (with one, two, or even three EHS Managers on site), and for different customers with different needs." *Id.* at 18.

In reply, Greinstein avers that Defendants do not dispute each EHS manager, irrespective of his or her official job title or responsibilities, was paid according to the same pay practice. ECF No. 113 at 3–6. Individual differences in job duties are thus irrelevant.

Lastly, the parties do not agree whether the Court has personal jurisdiction over out-of-state opt-in plaintiffs. Greinstein argues the Court should not consider the jurisdictional dispute at this time. ECF No. 113 at 9–10. Defendants argue the Supreme Court's decision in *Bristol-Myer Squibb* requires the court to narrow the size of the proposed collective. ECF No. 104 at 23.

3

LEGAL STANDARDS

### A. Personal Jurisdiction

In a federal question case, the Fifth Amendment's Due Process Clause fixes the limits of the Court's personal jurisdiction. *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). To "exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Cap. Intern., Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987). "The service of process in a federal action is covered generally by Rule 4 of the Federal Rules of Civil Procedure." *Id.* Rule 4 makes service of process effective over a defendant either "when authorized by a federal statute" or where the defendant "is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." FED. R. CIV. P. 4(k). Unlike some federal statutes, the FLSA does not authorize nationwide service of process. Therefore, under Rule 4, service can only be effective to the extent a Texas state court of general jurisdiction could exercise jurisdiction over Defendants. Texas's long-arm statute permits a Texas court to exercise jurisdiction to the full extent allowable under the 14th Amendment's Due Process Clause. *Sayers Constr., LLC v. Timberline Constr. Inc.*, 976 F.3d 570, 573 (5th Cir. 2020). So, the inquiry collapses into whether the Court can exercise personal jurisdiction under the constraints of the Fourteenth Amendment.

### B. FLSA Obligations

Under the FLSA, "no employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Additionally, the FLSA gives employees the right to bring an action on behalf of themselves, as well as "other employees similarly situated." *Id.* § 216(b).

Section 216(b) establishes an opt-in scheme under which plaintiffs must affirmatively notify the court of their intention to become parties to the suit. *See Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 (5th Cir. 2008).

**ANALYSIS**

Defendants argue the Court cannot conditionally certify individuals over whose claims it does not have personal jurisdiction. ECF No. 104 at 22. Greinstein argues personal jurisdiction may not be challenged in a response to a motion for conditional certification. ECF No 113 at 9. But Greinstein cites no authority for this proposition. As an initial matter, the Court concludes it must decide this issue now and not defer it to the second stage of certification. Courts should only authorize notice to individuals who might be in the collective. If the Court authorized notice to individuals who cannot be in the collective, it would only sow confusion. For example, an out-of-state would-be plaintiff might opt-in to the collective only to be expelled from the collective later on jurisdictional grounds. Accordingly, the Court must address the question now, not later.

### A. This Court does not have personal jurisdiction over potential out-of-state opt-in plaintiffs' claims

*1. The Supreme Court's decision in Bristol-Myers Squib and the parties' contentions*

Under the Fourteenth Amendment, two types of personal jurisdiction exist: general jurisdiction and specific jurisdiction. General jurisdiction over a corporation exists where the company is incorporated and where it maintains its principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Greinstein does not argue that Defendants are subject to general jurisdiction in Texas as Greinstein does not oppose Defendants' contention that FieldCore and Granite are a Delaware corporations with principal places of business in Georgia. ECF No. 121 at 2.

5

On the other hand, specific jurisdiction exists over suits that arise out of a defendant's contact with the forum. *Daimler*, 571 U.S. at 127. The Fifth Circuit has articulated a three-step analysis for specific jurisdiction:

> (1) whether the defendant has minimum contacts with the forum state, *i.e.*, whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Libersat v. Sundance Energy, Inc.*, 978 F.3d 315, 318–19 (5th Cir. 2020).

In *Bristol-Myers Squib Co. v. Super Ct. of Cal., San Francisco Cnty.* ("*BMS*"), the Supreme Court addressed the second factor regarding relatedness in the context of whether California state courts had specific jurisdiction over the tort claims of nonresident plaintiffs against out-of-state defendants. 137 S. Ct. 1773 (2017).

In *BMS*, the issue was whether a California state court could exercise specific personal jurisdiction over a company when in-state plaintiffs joined with out-of-state plaintiffs to assert products liability claims. *Id.* at 1778. A group of plaintiffs, consisting of 86 California residents and 592 residents of 33 other states, filed eight separate complaints in California state court. All the complaints asserted claims under California law. *Id.* The Supreme Court held that the California court did not have specific jurisdiction over the out-of-state defendants for the out-of-state plaintiffs' claims because the out-of-state plaintiffs' claims had no connection to California. *Id.* at 1781. Since *BMS*, district courts have the country have split on the issue of the applicability of *BMS* to FLSA collective actions. *See Chavez v. Steller Mgmt. Grp., LLC*, 2020 WL 4505482, at *6–7 (N.D. Cal. Aug. 5, 2020) (collecting cases); *Pettenato v. Beacon Health Options, Inc.*, 425 F.Supp.3d 264 (S.D.N.Y. 2019) (analyzing the varying applications of *BMS* to FLSA collections actions in district courts around the country). No circuit court has decided the issue.

Defendants contend *BMS* precludes the Court from exercising specific jurisdiction over potential out-of-state plaintiffs' claims. Greinstein, on the other hand, asks the court to adopt the reasoning of "most courts" around the country that have rejected the application of *BMS* to collective actions. ECF No. 113 at 9. Greinstein attempts to distinguish *BMS* as a case about the Fourteenth Amendment's limit on state courts as opposed to the current case which is a federal action filed in federal court asserting federal claims.

### 2. *BMS precludes the Court from exercising personal jurisdiction over potential out-of-state plaintiffs' claims*

The Court finds the straight-forward application of *BMS* means this Court cannot exercise personal jurisdiction over potential out-of-state plaintiffs' claims. Opt-in plaintiffs under the FLSA are no different from the out-of-state plaintiffs who joined the mass tort actions at issue in *BMS*. Opt-in plaintiffs are real *parties* in interest who have joined with an in-state plaintiff to pursue claims based on similar conduct that occurred somewhere else. *BMS* holds that a court cannot exercise personal jurisdiction for such claims.

First, the Court begins by looking at the text of the statute. The FLSA makes opt-ins parties to the lawsuit. The statute states that no "employee shall be a *party* plaintiff to any such action unless he gives his consent in writing to become such a *party* and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b) (emphasis added). "In other words, 29 U.S.C. § 216(b) does not truly authorize a class action: it is properly viewed as a rule of joinder under which only the individual opt-in plaintiffs have legal status, not the aggregate class of aggrieved employees." *Roy v. FedEx Ground Package Sys., Inc.*, 353 F.Supp.3d 43, 59 (D. Mass. 2018) (quoting *Anjum v. J.C. Penney Co.*, 2014 WL 5090018, at *8 (E.D.N.Y. Oct. 9, 2014)). Thus, "every plaintiff who opts in to a collective action has party status." 7B CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRAC. & PROC. § 1807 (3d ed. 2020).

Second, the Court finds the principles of *BMS* apply to this case. *BMS twice* states that for *each* claim "there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" *BMS*, 137 S. Ct. at 1780, 1781 (alteration in original) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). In this case, there is no "affiliation" between potential out-of-state plaintiffs' claims and Texas. The Court thus adopts the conclusion of other district courts who have "found that the personal jurisdiction analysis applies to all opt-in plaintiffs in a collective action in the same way that the Supreme Court found that the personal jurisdiction analysis applies to each plaintiff in a mass tort action." *See, e.g.*, *Chavira v. OS Restaurant Serv., LLC*, 2019 WL 4769101, at *6 (D. Mass Sept. 30, 2019).

To have satisfied the relatedness prong, Greinstein would have had to show *each* plaintiff — or potential plaintiff — and claim fulfilled the Fifth Circuit's three-part specific jurisdiction test. Greinstein, however, makes no relatedness argument regarding out-of-state employees. Instead, his specific-jurisdiction argument relies on his contention that *BMS* does not apply to the claims of collective action members. Because the Court finds *BMS does* apply to FLSA actions, potential out-of-state opt-in plaintiffs cannot possibly satisfy the relatedness requirement necessary to establish specific jurisdiction. So, to the extent Greinstein seeks to issue notice of the collective action to EHS Managers who resided and worked for Defendants outside of Texas, the motion is DENIED.

### 3. *Other courts erred by focusing their analysis on federalism and congressional purpose*

In so deciding, the Court rejects the *Swamy* line of case which do not apply *BMS* to FLSA actions. *Swamy v. Title Source, Inc.*, 2017 WL 5196780, at *2 (N.D. Cal. Nov. 10, 2017). These

8

cases emphasize two reasons for not applying *BMS* in this context: (1) the lack of federalism concerns in FLSA actions, and (2) the purported frustration of Congressional purpose.

First, district courts following *Swamy* stress the concerns about federalism and state sovereignty — which underscored the Supreme Court's decision in *BMS* — do not exist in the FLSA context. For example:

> I also find that the Supreme Court's focus in *BMS* on concerns regarding federalism and state sovereignty support declining to extend its holding to FLSA actions. *See BMS*, 137 S. Ct. at 1780. The Court emphasized the fact that "a state court's assertion of jurisdiction exposes defendants to the State's coercive power." *Id.* at 1779. The Fourteenth Amendment's Due Process Clause serves the necessary function of limiting the power of the state court "to render a valid personal judgment against a nonresident defendant." *Id.* Restrictions on personal jurisdiction then are not merely about avoiding "inconvenient or distant litigation." *Id.* at 1780. "They are [also] a consequence of territorial limitations on the power of respective States." *Id.* But "[w]hen a federal court adjudicates a federal question claim, it exercises the sovereign power of the United States and no federalism problem is presented." WRIGHT & MILLER, 4 FED. PRAC. & PROC. CIV. § 1068.1 (4th ed.). The anxiety surrounding federalism expressed in *BMS* is inapplicable to a FLSA action.

*O'Quinn v. TransCanada USA Serv., Inc.*, 2020 WL 3497491, at *14 (S.D.W.Va. June 29, 2020) (some citations omitted).

The district courts who engage in this analysis are committing a fundamental error. These district courts believe that if the federalism concerns of *BMS* disappear, then they are free to reweigh the due process calculus. Then personal jurisdiction could be obtained over defendants. However, this practice is not compatible with Rule 4 of the Rules of Civil Procedure.

As stated above, Rule 4 governs the service of process in FLSA cases, which gives the Court personal jurisdiction over defendants. Rule 4(k)(1)(A) specifically limits effective service to a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Thus, district courts are *bound to the exact same limits* as state courts. In other words, Rule 4(k)(1)(A) is, itself, a limit on jurisdiction when it is the only basis for the exercise of personal jurisdiction.

The *Swamy* line of cases attempts to extend district court jurisdiction *beyond* that of the state courts by re-doing the Fourteenth Amendment balancing test of *BMS*. But this flies in the face of the *textual* command of Rule 4. It simply does not matter if federalism concerns are absent in the FLSA context, because Rule 4 ties federal courts to the same limitations as state courts. Since state courts are bound by *BMS*, so are federal courts.

Second, the *Swamy* line of cases argues the application of *BMS* to FLSA actions will frustrate Congress's *purpose* in passing the Act:

> Congress created a mechanism for employees to bring their claims on behalf of other employees who are "similarly situated," and in no way limited those claims to in-state plaintiffs. 29 U.S.C. § 216(b). Thus, our circumstances are far different from those contemplated by the Supreme Court in *Bristol-Myers*. The result of the rule Title Source urges would be that each putative collective member not residing in either the state where the suit is brought, or a state where the defendant is domiciled, could not be part of the collective action. This would splinter most nationwide collective actions, trespass on the expressed intent of Congress, and greatly diminish the efficacy of FLSA collective actions as a means to vindicate employees' rights.

*Swamy*, 2017 WL 5196780, at *2.

Preliminarily, the Court disagrees with *Swamy*'s parade of horrible for two reasons. First, nothing about a territorial limit prevents a nationwide collective action. The plaintiff merely must sue where the defendant is subject to general jurisdiction. Second, Congress did not include a nationwide service of process provision in the FLSA. In 1914, twenty-four years before passing the FLSA, Congress provided for nationwide service of process in the Clayton Act. 15 U.S.C. § 22. The lack of a similar provision in the FLSA suggests that Congress intended to limit where nationwide actions can be brought. When Congress knows how to provide a remedy but does not do so, courts should infer that Congress's decision was intentional. *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 485 (1996) ("Congress thus demonstrated in CERCLA that it knew how to provide for the recovery of cleanup costs, and that the language used to define the remedies under RCRA

does not provide that remedy."). The Court could therefore conclude that Congress did not intend to subject employers to nationwide collection actions wherever they had employees.

But more importantly, the Court notes that relying on the broad purposes of the FLSA is an impermissible form of statutory construction. *Rodriguez v. United States*, 480 U.S. 522, 525 (1987). The *Swamy* line of cases argues the mere fact that FLSA collective actions might be more inefficient under *BMS* is enough to justify crafting a jurisdictional grant over defendants. This is so even though Congress itself did not see it fit to add a nationwide service of process. But this confuses "reading" with "writing"; courts are tasked with the former and must avoid the latter. *See* generally, ANTONIN SCALIA, A MATTER OF INTERPRETATION (1997). "[N]o legislation pursues its purposes at all costs. Deciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice—and it frustrates rather than effectuates legislative intent simplistically to assume that *whatever* furthers the statute's primary objective must be the law." *Id.* at 525–26 (emphasis in original). District courts hold "only the judicial power . . . We lack the prerogative to repair laws that do not work out in practice, just as the people lack the ability to throw us out of office if they dislike the solutions we concoct. We must always remember, therefore, that '[o]ur task is to apply the text, not to improve upon it.'" *King v. Burwell*, 576 U.S. 473, 515 (2015) (Scalia, J., dissenting) (quoting *Pavelic & LeFlore v. Marvel Ent. Grp., Div. of Cadence Indus. Corp.*, 493 U.S. 120, 126 (1989)).

### B. The Court will conditionally certify the now-narrowed collective

District courts have the discretionary power to conditionally certify collective actions and order notice to putative class members. *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 170–71 (1989). In deciding Greinstein's first motion for conditional certification, this Court adopted the two-step *Lusardi* approach to class certification. ECF No. 58 at 5–6. Defendants now argue a

11

heightened pleading standard should be imposed based on the length of this case and because Greinstein was able to conduct some discovery. The Court, however, finds the lenient *Lusardi* standard should still apply. While this case is two years old, this case was stayed for months while the parties attempted mediation. Furthermore, Greinstein's discovery was limited by the Court. *See Straka v. Methodist Dallas Med. Ctr. Auxiliary*, No. 3:16-CV-2192-B, 2018 WL 1611865 (N.D. Tex. April 3, 2018) ("The Court finds the lenient standard more appropriate in this case. Discovery only lasted four months, and the Court limited its scope.").

The two stages of the *Lusardi* approach are the "notice stage" and the "decertification stage." At the notice stage, the Court conducts an initial inquiry into "whether the putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class." *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 519 (5th Cir. 2010) Because of the limited evidence available at the notice stage, "this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class." *Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995).

To obtain a conditional certification at the notice stage a plaintiff must show: "(1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit." *Jones v. SuperMedia Inc.*, 281 F.R.D. 282, 287–88 (N.D. Tex. 2012). The FLSA's remedial nature strongly favors allowing cases to proceed collectively. *Id.*

### 1.  Greinstein has shown other aggrieved individuals exist

The Court first considers whether there is a reasonable basis for crediting Greinstein's assertion that other aggrieved individuals exist. *Id.* In addition to his own declaration, Greinstein

has included declarations from the three opt-in plaintiffs — which are nearly identical, except for the declarants' name, dates of employment, and the state(s) in which he was employed—who testify they: (1) were employed by Defendants as "EHS employees;" (2) were compensated on a hourly basis; (3) regularly worked more than 40 hours in a given workweek; and (4) were not paid overtime. ECF Nos. 97–2, 113–1, 113–2. Additionally, each declarant, including Greinstein, testifies he knows other EHS managers who regularly worked over 40 hours per week who did not receive overtime pay. On this record, the Court finds Greinstein has established a reasonable basis his assertion that other aggrieved individuals exist.[2]

Nest, the Court will briefly address Defendants' allegations that Greinstein's claim about being paid an hourly rate is "absurd on its face" and is "explicitly contradicted by their own offer letters," which prompted the Court to enter a Show Cause Order (ECF No. 124). Here, the underlying problem is relatively simple: Greinstein's pleadings were not a model of clarity. To the Court, it was unclear if Greinstein was alleging Defendants were lying about paying EHS Managers salary by making improper deductions (ECF No. 125 at 3–4) *or* if Greinstein was alleging Defendants' pay scheme, even if paid exactly as Defendants claim it is, is in violation of the FLSA. *See, e.g., Hewitt v. Helix Energy Sol. Grp, Inc.*, 956 F.3d 341, 344 (5th Cir. 2020). It appears that Greinstein alleges *both* lines of attack. After reading Greinstein's Response, the Court is satisfied that Greinstein and his counsel are not in violation of Rule 11. The Court acknowledges Defendants may or may not have a case that they do pay Greinstein as specified in the offer letters. But that is a merits determination not appropriate at this stage of the *Lusardi* two-step. *Frazier v. Dallas/Fort Worth Int'l Airport Bd.*, 285 F.Supp.3d 969, 973 (N.D. Tex. 2018).

---

[2] The Court acknowledges that, because of the narrowed collective, Greinstein's burden is to show other aggrieved individuals exist *in Texas*. The Court is satisfied, however, that Greinstein's pleadings meet the *Lusardi* standard and will not require Greinstein to file a third motion for conditional certification.

And *even if* the Court accepted Defendants' contentions that it paid a full "salary" for each week where Greinstein worked, it still would be unclear if Defendants' pay scheme was in violation of the FLSA. *See, e.g., Hewitt v. Helix Energy Sol. Grp, Inc.*, 956 F.3d 341, 344 (5th Cir. 2020). Accordingly, Greinstein has met his low burden at this stage of the *Lusardi* method.

   *2.   Greinstein has shown other aggrieved individuals are similarly situated*

The parties disagree over whether other EHS Managers are similarly situated to Greinstein "in relevant respects given the claims and defenses asserted." *Jones*, 281 F.R.D. at 287–88. Defendants forcefully argue each EHS Manager has different responsibilities and duties which can vary from job site to job site. ECF No. 104 at 18–20. Defendants believe these differences are large enough to make other EHS Managers not "similarly situated" for conditional certification purposes. The Court, however, disagrees and finds Judge Brown's recent opinion to be instructive on this matter.

> Generally, courts require that members of an FLSA class have similar job titles and responsibilities. But "similarly situated" does not mean identically situated. Rather, to satisfy *Lusardi*'s similarly situated requirement, a plaintiff must show that potential class members are "similarly situated ... in relevant respects given the claims and defenses asserted." So, while the defendants are correct that courts have found "employees with the same job title are not 'similarly situated' for the purposes of an 'opt-in' FLSA class if their day-to-day duties vary substantially," potential class members' job titles or responsibilities are not the end-all-be-all.
>
> The purpose of requiring class members to have similar job positions is to ensure judicial efficiency by "avoiding the need for individualized inquiries into whether a defendant's policy violates the FLSA as to some employees but not others." With this in mind, courts generally focus on the similarity of the potential class members' job positions (i.e., titles and responsibilities), because "the nature of the work performed by each plaintiff will determine (a) whether an FLSA violation occurred and (b) whether a relevant FLSA exemption applies." But, if the alleged FLSA violations do not turn on the nature of the work performed—meaning the differences in job titles or responsibilities are not relevant to the claims and defenses asserted—courts can, and do, conditionally certify classes that encompass a wide range of job titles and responsibilities.

*Thrower v. UniversalPegasus Int'l, Inc.*, 2020 WL 5258521, at \*8 (S.D. Tex. Sept. 3, 2020).

Here, the possibly dissimilar responsibilities and duties of individual EHS Managers do not preclude conditional certification. Greinstein alleges *all* EHS Managers were subject to the same pay practices which, if proven, is a *per se* violation of the FLSA. In other words, the differences between class members' particular responsibilities and duties are not material to the allegations in this case. *Id.* at \*9. Accordingly, Greinstein has shown the other aggrieved individuals are similarly situated because they were all subject to a uniform pay scheme which is the only material matter in respect to the claims and defenses asserted.

### 3. Greinstein has shown other aggrieved individuals want to opt in

Lastly, Greinstein has carried his light burden to show other aggrieved individuals want to opt in. Four EHS Managers have joined this collective action. All four provided declarations stating other EHS Managers would be interested in joining this suit. Additionally, Greinstein provided offers letters, pay data, and the additional declarations which were not part of his first motion for conditional certification. The Court reaches this conclusion even though it acknowledges that Greinstein has a burden to show other aggrieved individuals are located *in Texas*. Even if some of already opted-in EHS Managers are dismissed for lack of personal jurisdiction, their willingness to join this suit convinces the Court that other individuals located in Texas may join the suit.

Greinstein has thus satisfied all three elements of the *Lusardi* standard. Accordingly, the Court conditionally certifies the following class:

> All current and former EHS employees who resided or worked for FieldCore or Granite Services in Texas who were paid on the "Retainer B Salary" plan any time during the three-year period before this order.[3]

---

[3] The Court has included the "Retainer B Salary" language to clarify the distinction from the XHOUR pay scheme at dispute in *Trottier v. FieldCore Services Solutions, LLC*, No. 2:20-cv-00186-Z also pending before this Court. *See*

### C. Form of Notice

Defendants argue the notice and consent form Greinstein provided is "neither fair nor neutral." ECF No. 104 at 24. Additionally, Defendants argue the method of contacting potential plaintiffs is "oppressive." *Id.* Greinstein did not specifically respond to this argument but did agree to "confer with Defendants about the contents and methods of the Notice." ECF No. 113 at 10. The Court concludes that such a conference is appropriate. The Court will include the details and deadline for the conference in its order below.

CONCLUSION

For the reasons stated herein, it is hereby ORDERED:

(1) Greinstein's Renewed Motion for Conditional Certification and Court-Authorized Notice is GRANTED IN PART in accordance with the Court's opinion above.

(2) By December 4, 2020, the parties shall meet and confer regarding the claims of the out-of-state named plaintiffs concerning whether those claims should be dismissed by stipulation or by motion of Defendants. In either case, any stipulation or motion for dismissal shall be filed within 28 days of this order.

(3) By December 4, 2020, Defendants shall provide Greinstein's Counsel with the names, last known home addresses, email addresses (both personal and work, where available), phone numbers, and date(s) of employment of potential plaintiffs who are part of the Court's conditionally certified class.

(4) By December 4, 2020, Greinstein shall meet and confer with Defendant as to amending the contents and methods of the proposed Notice.

---

*also* ECF No. 113 at 6 ("EHS managers that are not covered by Defendants' "Retainer B Salary" straight time for overtime policy are excluded from Greinstein's proposed class.").

(5) By December 11, 2020, the parties shall file a Motion to Approve Notice, Opt-in Consent Form, and Delivery Methods for the Magistrate Judge's consideration. In the event the parties cannot agree on drafts and delivery methods, they shall submit a single Notice and/or Opt-in Consent Form, indicating the language and delivery method(s) to which they agree, the language and delivery method(s) upon which they cannot agree, and the content and delivery method(s) each side proposes.

(6) Once the Magistrate Judge approves the Notice and Opt-in Consent Form, Greinstein is authorized to issue notice to all members of the conditionally certified collective action in accordance with court-authorized delivery methods.

**SO ORDERED.**

November 20, 2020

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE