# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# AMARILLO DIVISION

| | |
|---|---|
| HERMAN GREINSTEIN, Individually and for Others Similarly Situated, | Case No. 2:18-cv-00208-Z-BR |
| v. | Jury Trial Demanded |
| GRANITE SERVICES INTERNATIONAL, INC., and FIELDCORE SERVICES SOLUTIONS, LLC | FLSA Collective Action |

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Respectfully submitted,

**Michael A. Josephson**
State Bar No. 24014780
**Andrew W. Dunlap**
State Bar No. 24078444
**Richard M. Schreiber**
State Bar No. 24056278
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300
adunlap@mybackwages.com
mjosephson@mybackwages.com
rschrieiber@mybackwages.com

**Richard J. (Rex) Burch**
Fed. Id. 21615
State Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

**Channy F. Wood**
Texas Bar No. 00791954
cwood@woodlawfirm-tx.com
**WOOD LAW FIRM, LLP**
Physical: 610 S.W. 11th Avenue (79101)
Mailing: P.O. Box 1439
Amarillo, Texas 79105-1439
Telephone: 806.372.9663
Facsimile: 806.372.9664

**ATTORNEYS IN CHARGE FOR PLAINTIFFS**

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................................... ii

A.    SUMMARY. ................................................................................................................... 1

B.    OBJECTION TO SUMMARY JUDGMENT EVIDENCE ..................................................... 4

C.    STATEMENT OF MATERIAL FACTS. ............................................................................. 6

D.    SUMMARY JUDGMENT STANDARD. .............................................................................. 9

E.    THE FLSA APPLIES THE SAME TO ALL EMPLOYEES, EVEN THOSE HIGHLY PAID. ... 9

F.    GREINSTEIN WAS NEVER A "HIGHLY COMPENSATED EMPLOYEE." ......................... 10

G.    FIELDCORE DIDN'T PAY PLAINTIFFS ON A "SALARY" BASIS. .................................. 11

    1.    The "Salary Basis" Test ...................................................................... 12

    2.    FieldCore Paid Plaintiffs on an Hourly (Not Salary) Basis. .......... 13

    3.    FieldCore Didn't Guarantee Its Alleged Salary. ............................. 15

    4.    FieldCore Also Fails the "Reasonable Relationship" Test. ............ 18

        a.    The Reasonable Relationship Test. ...................................... 18

        b.    The Reasonable Relationship Test Applies. ........................ 20

            i.    The Reasonable Relationship Test applies to highly compensated employees. .............................................. 20

            ii.   The Reasonable Relationship Test applies to all employees paid additional compensation above their purported guarantee. ............... 24

        c.    FieldCore Fails the Reasonable Relationship Test. ............ 26

H.    THERE ARE FACT ISSUES REGARDING PLAINTIFFS' DUTIES. ..................................... 27

    1.    Plaintiffs Don't Satisfy the Administrative Exemption Duties Test. ........................... 28

    2.    EHS Specialists Are Not "Learned Professionals." ........................ 30

    3.    FieldCore Misstates, and Cannot Satisfy, the "Combination" Exemption .................. 32

    4.    Plaintiffs Don't Satisfy the HCE Exemption Duties Test. ............. 33

I.    THE DOL'S "SALARY BASIS" REGULATIONS ARE PERMITTED AND CONTROLLING. ............. 34

J.    THERE IS A FACT QUESTION WHETHER FIELDCORE WILLFULLY VIOLATED THE FLSA. ...... 35

K.    CONCLUSION. ............................................................................................................. 37

TABLE OF AUTHORITIES

Page(s)

Cases

*Aimable v. Long & Scott Farms,*
Inc., 20 F.3d 434 (11th Cir. 1994) ...................................................................................13
*Alavar v. Trican Well Serv., L.P.,*
397 F. Supp. 3d 873 (W.D. Tex. 2019) ...........................................................................35
*Anani v. CVS RX Services, Inc.,*
730 F.3d 146 (2d Cir. 2013) ...........................................................................................21
*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ...........................................................................................................9
*Auer v. Robbins,*
519 U.S. 452 (1997) ...........................................................................................22, 23, 34
*Barnhart v. Walton,*
535 U.S. 212 (2002) .........................................................................................................23
*Bartels v. Birmingham,*
332 U.S. 126 (1947) .........................................................................................................13
*Belt v. EmCare, Inc.,*
351 F. Supp. 2d 625 (E.D. Tex. 2005) ............................................................................34
*Bongat v. Fairview Nursing Care Ctr., Inc.,*
341 F. Supp. 2d 181 (E.D.N.Y. 2004) .............................................................................14
*Brazos River Auth. v. GE Ionics, Inc.,*
469 F.3d 416 (5th Cir. 2006) ......................................................................................... 4, 5
*Brock v. Claridge Hotel & Casino,*
846 F.2d 180 (3d Cir. 1988) ..............................................................................2, 12, 14, 19
*Brown v. AT & T Servs. Inc.,*
236 F. Supp. 3d 1000 (S.D. Tex. 2017) ............................................................................6
*Buckingham v. Booz Allen Hamilton, Inc.,*
64 F. Supp. 3d 981 (S.D. Tex. 2014) ............................................................................ 5, 6
*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ...................................................................................................... 9, 35
*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,*
467 U.S. 837 (1984) .................................................................................................... 34, 35
*Clark v. Centene Co. of Texas, L.P.,*
44 F. Supp. 3d 674 (W.D. Tex. 2014) .............................................................................30
*Clark v. Centene Co. of Texas, L.P.,*
656 F. App'x 688 (5th Cir. 2016) ............................................................................... 30, 31
*Coates v. Dassault Falcon Jet Corp.,*
961 F.3d 1039 (8th Cir. 2020) ...........................................................................20, 21, 24
*Crowe v. Examworks, Inc.,*
136 F. Supp. 3d 16 (D. Mass. 2015) ..................................................................................3
*Dalheim v. KDFW-TV,*
918 F.2d 1220 (5th Cir. 1990) .................................................................................... 32, 33
*Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,*
530 F.3d 395 (5th Cir. 2008) ..............................................................................................9

*Dole v. Bishop,*
  740 F.Supp. 1221 (S.D. Miss. 1990) .................................................................. 1, 12
*Dybach v. Fla. Dep't of,*
  *Corrs.*, 942 F.2d 1562 (11th Cir. 1991) ..................................................................... 30
*Ellis v. J.R.'s Country Stores, Inc.,*
  779 F.3d 1184 (10th Cir. 2015) .............................................................................. 24
*Ergo v. Int'l Merch. Servs., Inc.,*
  519 F. Supp. 2d 765 (N.D. Ill. 2007) ....................................................................... 15
*Fetrow- Fox v. Harrah's Entm't Inc.,*
  No. 2:10-CV-560-RLH, 2011 WL 5827199, at *3 (D. Nev. Nov. 18, 2011) .................. 15
*Goldberg v. Whitaker House Coop., Inc.,*
  366 U.S. 28 (1961) ............................................................................................... 13
*Gonzales v. Oregon,*
  546 U.S. 243 (2006) ............................................................................................. 35
*Hewitt v. HelixEnergy Sols. Grp., Inc.,*
  15 F.4th 289, 291(5th Cir. 2021) ..................................................................... passim
*Hughes v. Gulf Interstate Field Servs., Inc.,*
  878 F.3d 183 (6th Cir. 2017) ....................................................................... 21, 22, 24
*In re Texas EZPawn Fair Lab. Standards Act Litig.,*
  633 F. Supp. 2d 395 (W.D. Tex. 2008) ...................................................................... 35
*In re Wal-Mart Stores, Inc.,*
  395 F.3d 1177 (10th Cir. 2005) .............................................................................. 14
*IntraComm, Inc. v. Bajaj,*
  492 F.3d 285 (4th Cir. 2007) ................................................................................. 32
*Jewell Ridge Coal Corp. v. Local No.,*
  *6167*, 325 U.S. 161 (1945) ....................................................................................... 9
*Jones v. RealPage, Inc.,* No. 3:19-CV-2087-B,
  2020 WL 6149969 (N.D. Tex. Oct. 19, 2020) ............................................................. 6
*Little v. Liquid Air Corp.,*
  37 F.3d 1069 (5th Cir. 1994) ................................................................................. 35
*Litvinova v. City & Cnty. of San Francisco,*
  No. 18-cv-01494-RS, 2022 WL 2902020, at *4 n.7 (N.D. Cal. July 15, 2022) ............... 25
*Litz v. Saint Consulting Group, Inc.,*
  772 F.3d 1 (1st Cir. 2014) ................................................................................. 21, 22
*Litz v. Saint Consulting Grp., Inc.,*
  2013 WL 5205868 (D. Mass. Sept. 13, 2013) ............................................................ 22
*Marker v. Union Fid. Life Ins. Co.,*
  125 F.R.D. 121 (M.D.N.C.1989) .............................................................................. 5
*McLaughlin v. Richland Shoe Co.,*
  486 U.S. 128 (1988) ............................................................................................. 36
*Morton v. Ruiz,*
  415 U.S. 199 (1974) ............................................................................................. 34
*Owsley v. San Antonio Indep. Sch. Dist.,*
  187 F.3d 521 (5th Cir. 1999) ................................................................................. 31
*Parrish v. Premier Directional Drilling,*
  917 F.3d 369 (5th Cir. 2019) .......................................................................... 9, 12, 13
*Real v. Driscoll Strawberry Assoc., Inc.,*
  603 F.2d 748 (9th Cir.1979) ............................................................................. 12, 13

*Reich v. Bay, Inc.,*
  23 F.3d 110 (5th Cir.1994) ..................................................................................36
*Retail Store Emp. Union, Local 400 v. Drug Fair-Cmty. Drug Co.,*
  307 F. Supp. 473 (D.D.C 1969)............................................................................16
*Robinson v. Nexion Health At Terrell, Inc.,*
  312 F.R.D. 438 (N.D. Tex. 2014) .......................................................................4, 5
*Ryder v. Union Pac. R.R. Co.,*
  945 F.3d 194 (5th Cir. 2019) ..................................................................................9
*Singer v. City of Waco,*
  324 F.3d 813 (5th Cir.2003) .............................................................................36, 37
*Sonnier v. Recon Mgmt. Servs. Inc.,*
  No. 2:20-CV-00002, 2022 WL 141779 (W.D. La. Jan. 14, 2022) ........................25
*Trottier v. FieldCore Services Solutions, LLC et al.,*
  2022 WL 658765 (N.D. Tex. Mar. 4, 2022).........................................................24
*U.S. v. Mead Corp.,*
  533 U.S. 218 (2001) ..............................................................................................35
*Vaughn v. Wingo Serv. Co., Inc.,*
  No. 4:20-CV-3915, 2022 WL 4280665 (S.D. Tex. Aug. 4, 2022) ....................8, 25
*Vela v. City of Houston,*
  276 F.3d 659 (5th Cir. 2001) ..................................................................................3
*Venable v. Schlumberger Ltd.,*
  2022 WL 895447 (W.D. La. Mar. 25, 2022) .........................................................25
*Villegas v. Dependable Const. Servs., Inc.,*
  No. CIV. 4:07-CV-2165, 2008 WL 5137321 (S.D. Tex. Dec. 8, 2008) .............32, 33
*Wirtz v. Mississippi Publishers Corp.,*
  364 F.2d 603 (5th Cir. 1966) ................................................................................34
*Zannikos v. Oil Inspections (U.S.A.), Inc.,*
  605 F. App'x 349 (5th Cir. 2015) ............................................................................3
*Zuber v. APC Natchiz, Inc.,*
  144 F. App'x 657 (9th Cir. 2005) ............................................................................1

Statutes

29 U.S.C. § 207(a)(1) ...................................................................................................11
29 U.S.C. § 213(a)(1)...........................................................................................20, 34

Rules

Fed. R. Civ. P. 37(c)(1) ................................................................................................6
FED. R. CIV. P. 56(a) ....................................................................................................9
Rule 37 ...........................................................................................................................6

Regulations

29 C.F.R. § 541.200(a)(3) ...........................................................................................28
29 C.F.R. § 541.202(a) ................................................................................................29
29 C.F.R. § 541.203(g) ................................................................................................29
29 C.F.R. § 541.301(a) ................................................................................................30

29 C.F.R. § 541.301(d) .................................................................................................................. 3

29 C.F.R. § 541.301(e)(2) ............................................................................................................ 31

29 C.F.R. § 541.600 .................................................................................................................... 20

29 C.F.R. § 541.601(a)(1) ............................................................................................... 3, 23, 33

29 C.F.R. § 541.601(b)(3) .............................................................................................. 2, 3, 10, 11

29 C.F.R. § 541.602 .................................................................................................................... 20

29 C.F.R. § 541.602(a) ..................................................................................................... 12, 14, 15

29 C.F.R. § 541.603 .................................................................................................................... 20

29 C.F.R. § 541.603(a) ..................................................................................................... 2, 12, 15, 18

29 C.F.R. § 541.603(b) ................................................................................................................ 15

29 C.F.R. § 541.604(a) ..................................................................................................... 21, 22, 26

29 C.F.R. § 541.604(b) .......................................................................................................... passim

29 C.F.R. § 541.605 .................................................................................................................... 20

29 C.F.R. § 541.606 .................................................................................................................... 20

29 C.F.R. § 541.701 .................................................................................................................... 33

29 C.F.R. §] 541.203 ..................................................................................................................... 3

29 C.F.R. §§ 541.100(a)(1) ..................................................................................................... 6, 11

29 C.F.R. § 541.601 ......................................................................................................... 10, 20, 21

69 Fed. Reg. 22,122-01 ................................................................................................. 9, 15, 18, 19

§ 541.604 ............................................................................................................................... passim

Other Authorities

143 Cong. Rec. E317-04, E318, 1997 WL 79643, at *2(Feb. 26, 1997) ................................. 9

H.R. 8624, 76th Cong. (1940) ...................................................................................................... 9

Opinion Letter FLSA,
    2018-25, 2018 WL 5921453 (Nov. 8, 2018) ................................................................. passim

A.    SUMMARY.

Herman Greinstein worked for FieldCore as an Environmental, Health, and Safety (EHS) Specialist. When FieldCore scheduled him to work, it was usually for more than 40 hours in a week. When Greinstein worked more than 40 hours in a week, FieldCore did not pay him time and a half. Instead, FieldCore paid Greinstein the same hourly rate for all the hours he worked. Even including this "straight time for overtime," Greinstein never earned more than $88,000 a year on an annualized basis.

Since it knows paying straight time for overtime "clearly violates the FLSA overtime provisions[,]" *Dole v. Bishop*, 740 F.Supp. 1221, 1226 (S.D. Miss. 1990), FieldCore argues EHS Specialists are "exempt" from the FLSA's protections (though similar positions have been found non-exempt). *See, e.g., Zuber v. APC Natchiz, Inc.*, 144 F. App'x 657, 657 (9th Cir. 2005) (safety specialist was not exempt under the FLSA). Among other things, this requires FieldCore to prove it paid Greinstein (and anyone else it seeks to exempt) on a "salary basis" rather than based on the number of hours he worked. *Hewitt v. Helix Energy Sols. Grp., Inc.*, 15 F.4th 289, 291 (5th Cir. 2021) (*Hewitt III*) (the "same salary-basis requirement" applies "to all [FieldCore's claimed] exemptions"). And it didn't. FieldCore paid Greinstein (and the other Plaintiffs) the same hourly rate for all hours worked, even those after 40 in a week. *See, e.g.,* Appx. 27-31; Appx. 32-33; Appx. 6, Abel Depo. at 28:10-21.

FieldCore even admits the "reality" is that EHS Specialists like Greinstein are paid at the same hourly rate for overtime and non-overtime hours. *See, e.g.,* Appx. 27-31 (FieldCore's Resource Manager Site Safety Professionals stating: "Reality is the Employee receives $48.00 for each hour worked."). After all, the "salary" is just the employee's hourly rate multiplied by 40. Appx. 27-31; Appx. 32-33; Appx. 61. So "the rate [FieldCore pays] for the hours 1 to 40, is the same as the premium rate for hours above 40." Appx. 6, Abel Depo. at 28:10-21; *see also* Appx. 51-52, Abel Depo. at 16:9-17:1 ("Q. And that premium rate is essentially what their hourly rate would be for the hours worked between

1

one and 40, correct? A. Correct."). Undeterred, FieldCore insists its pay system consists of a "salary" plus "additional compensation[.]" Doc. 194 at 1.

But despite proclaiming that it paid Greinstein a "$93,600 Annual Salary" (Doc. 195 at 3 (PageID 3415)), FieldCore didn't pay any part of this so-called "annual salary," or anything else, unless Greinstein actually worked in a particular week. *See, e.g.,* Appx. 28. Even then, FieldCore did not guarantee the alleged "salary." FieldCore made improper deductions when Plaintiffs worked fewer than 40 hours—confirming it never intended to pay on a "salary basis." *See* Appx. 236 ¶ 8; Appx. 63-70; 29 C.F.R. § 541.603(a). Nor were Plaintiffs' alleged "salaries" reasonably related to the "amount actually earned" for their "normal scheduled workweek." *See* 29 C.F.R. § 541.604(b); Appx. 236-37 ¶¶ 9-11; Appx. 239-47, Reasonable Relationship Summary. Any "salary guarantee" was considerably smaller than Plaintiffs' time-based pay and merely gave the illusion of FLSA compliance. *See Hewitt III*, 15 F.4th at 290-91; *Brock v. Claridge Hotel & Casino,* 846 F.2d 180, 183-185 (3d Cir. 1988). That's because FieldCore's "salary" plus "additional compensation" was  a charade to give the appearance of compliance with the salary basis test while allowing FieldCore the benefits of paying Plaintiffs by the hour.

And to make matters worse, FieldCore falsely represents it paid Greinstein "total annualized compensation [at] a level well beyond $100,000." Doc. 194 at 1. The controlling regulation requires "total annual compensation" be calculated "based upon the number of weeks that the employee will be or has been **employed**." 29 C.F.R. § 541.601(b)(3) (2004) (emphasis added). FieldCore admits Greinstein was employed for more than 18 weeks in 2016 and more than 37 weeks in 2017. *See* Doc. 196-1 at Appx. 000004-05 (PageID 3473-3474). FieldCore nonetheless bases its calculations on the (decidedly lower) number of weeks Greinstein was assigned to work. Doc. 195 at 6, n. 7 (PageID 3418) (using the weeks "worked," instead of weeks "employed," as the denominator). That is, FieldCore pretends the weeks in which it paid Greinstein (and other EHS Specialists) nothing at all

don't count. *Id.* When "annualized" as required by 29 C.F.R. § 541.601(b)(3), Greinstein earned **less than $88,000** in his first year, and **less than $72,000** in his second year. FieldCore never got close to paying Greinstein enough "total annual compensation" for it to benefit from the test for "highly compensated employees." 29 C.F.R. § 541.601(a)(1) (2004).

Nor can FieldCore meet the requirements of the "default" exemptions. For example, the undisputed minimum "educational requirement" for an EHS Specialist is a "GED" plus some work experience. Doc. 196-1, FieldCore's Appx. 0053. The controlling "regulations make clear that a high school diploma and advanced knowledge that can be obtained through practical/occupational experience are **not enough** to satisfy this prong." *Crowe v. Examworks, Inc.*, 136 F. Supp. 3d 16, 36 (D. Mass. 2015) (emphasis added, citing 29 C.F.R. § 541.301(d)). Moreover, Greinstein's "OSHA Training" is not required to be an EHS Specialist and, in any event, falls far short of what is required for exemption even when combined with his high school diploma. *See, e.g., Vela v. City of Houston*, 276 F.3d 659 (5th Cir. 2001) (learned professional exemption was not applicable to paramedics and emergency medical technicians who had to complete 880 and 200 hours of specialized training, respectively).

Similarly, FieldCore cannot establish Greinstein (or the other EHS Specialists) are exempt under the "administrative" exemption. For example, FieldCore cites Greinstein's obligation to ensure employees acted "in accordance with Defendants' and client's training and policies and procedures" as evidence that he was performing exempt administrative work. Doc. 195 at 35 (PageID 3447). But as the Fifth Circuit has noted, "observing and inspecting [ongoing work] to determine whether they complied with relevant standards and specifications set forth by [the employer] and its customers" is **not** exempt administrative work. *See Zannikos v. Oil Inspections (U.S.A.), Inc.*, 605 F. App'x 349, 355 (5th Cir. 2015). Instead, such "functions overlap significantly with those characterized as generally non-administrative in [29 C.F.R. §] 541.203." *Id.*

3

In short, fact issues exist regarding whether FieldCore paid Greinstein and the other Plaintiffs on a "salary basis." Fact issues also exist as to whether FieldCore can meet the "duties tests" required by the exemptions it asserts and whether FieldCore "willfully" violated the FLSA. FieldCore's motion should be denied.

## B.   OBJECTION TO SUMMARY JUDGMENT EVIDENCE.

Plaintiffs object to FieldCore's use of the declaration of Vanessa Johnson (Doc. 196-1, Appx. 153-55). Johnson's declaration is FieldCore's attempt to explain why it didn't pay Greinstein his full salary for the week of October 3, 2016. *See* Doc. 195 at 10, 44-46; *see also* Doc. 196-3, Appx. 1264. But FieldCore already had its chance and failed. John Wadsworth was deposed by Greinstein on November 3, 2022 as FieldCore's corporate representative. Appx. 0071-93. Among other things, FieldCore designated Wadsworth to speak on its behalf regarding "[t]he justification for any deductions from PLAINTIFFS' and EHS WORKERS' purported salary and applicable policies governing payment of wages and deductions." Appx. 78 ¶ 7, 88 ¶ 7. So Greinstein's counsel asked Wadsworth specifically about the deduction to Greinstein's alleged "salary" for the week of October 3, 2016. Appx. 103-109, Wadsworth Depo. at 108:10-114:11. Wadsworth—and therefore FieldCore—said FieldCore "do[es] not know why [Greinstein] wasn't paid his fully salary." Appx. 109, Wadsworth Depo. at 114:8-11.

"When a corporation produces an employee pursuant to a rule 30(b)(6) notice, it represents that the employee has the authority to speak on behalf of the corporation with respect to the areas within the notice of deposition." *Brazos River Auth. v. GE Ionics, Inc.,* 469 F.3d 416, 433 (5th Cir. 2006). "The duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved. The deponent must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources." *Id.* (cleaned up); *see also Robinson v. Nexion Health At Terrell, Inc.,* 312 F.R.D. 438, 441 (N.D. Tex. 2014). "Once [FieldCore] designated [Wadsworth] as its corporate representative, it was

bound to educate [him] whether through documents, past employees, and/or other sources so that [he] could fully answer Plaintiff's questions about the [topics upon which he was designated to testify]." *Robinson,* 312 F.R.D. at 442 (citing *Brazos River,* 469 F.3d at 433). If FieldCore believed Wadsworth's testimony did not adequately represent its position, it was "obligated to provide a substitute." *Brazos River,* 469 F.3d at 433 (citing *Marker v. Union Fid. Life Ins. Co.,* 125 F.R.D. 121, 126 (M.D.N.C.1989)). FieldCore chose not to provide a substitute even though Wadsworth couldn't explain why FieldCore paid Greinstein less than his alleged "salary" for the week of October 3, 2016. Appx. 103-109, Wadsworth Depo. at 108:10-114:11.

It could have easily. In fact, Johnson was FieldCore's 30(b)(6) corporate representative the next day, November 4, 2022. *See* Appx. 117-139. But FieldCore didn't designate her to speak for FieldCore regarding its justification for deductions from Plaintiffs purported salaries. *Id.* So Greinstein's counsel didn't ask Johnson why FieldCore didn't pay Greinstein his full salary for the week of October 3, 2016. *Id.* Nor did FieldCore's counsel. If FieldCore wanted to rely on Johnson's testimony to explain its failure to pay Greinstein his full "salary," it needed to notify Plaintiffs it intended to substitute her for Wadsworth to speak for it as to its justification for any deductions from Plaintiffs' purported "salary" and applicable policies governing payment of wages and deductions. *Brazos River,* 469 F.3d at 433 (citing *Marker,* 125 F.R.D. at 126). It didn't. In fact, FieldCore first disclosed its explanation when it filed Johnson's declaration (Doc. 106-1, Appx. 153-55) along with its motion for summary judgment. By then it was too late. The discovery period ended on November 11, 2022. Doc. 185 ¶ II(F).

The Court should exclude any evidence purporting to explain why Greinstein was not paid his purported "salary" for the week of October 3, 2016 because FieldCore's position was not disclosed during discovery. "At the close of discovery, the record was silent on" FieldCore's position. *Buckingham v. Booz Allen Hamilton, Inc.,* 64 F. Supp. 3d 981, 985 (S.D. Tex. 2014). Plaintiffs requested FieldCore designate a representative to testify as to its position. Appx. 0071-93. FieldCore designated

Wadsworth. *Id.* Nonetheless, Wadsworth didn't know why Greinstein wasn't paid his "salary." Appx. 103-109, Wadsworth Depo. at 108:10-114:11. Not only did FieldCore choose not to substitute another representative, it allowed Johnson to testify on its behalf on other topics. Appx. 117-139. "As the result of [FieldCore's] failure to produce a corporate representative on this topic, [Plaintiffs were] unable to question [FieldCore's] employees about [why Greinstein wasn't paid his "salary"]. *Buckingham,* 64 F. Supp. 3d at 985. "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *Jones v. RealPage, Inc.,* No. 3:19-CV-2087-B, 2020 WL 6149969, at *2 (N.D. Tex. Oct. 19, 2020). Thus, FieldCore's new explanation of why Greinstein was not paid his purported "salary" for the week of October 3, 2016 (Johnson's Declaration (Doc. 106-1, Appx. 153-55)) "should be excluded under Rule 37." *Buckingham,* 64 F. Supp. 3d at 985; *see also Brown v. AT & T Servs. Inc.,* 236 F. Supp. 3d 1000, 1005 (S.D. Tex. 2017) ("[U]nder Rule 37(c)(1), [FieldCore] is prohibited from using [Johnson's declaration] to support [its] motion for summary judgment.").

Johnson's declaration should be excluded.

## C.   STATEMENT OF MATERIAL FACTS.

FieldCore did not pay any of the Plaintiffs time and a half for hours worked over 40. Doc. 96 ¶ 48; Appx. 14, Abel Depo. at 76:8-10. It paid Plaintiffs the same hourly rate for each hour worked. *See, e.g.,* Appx. 27-31; Appx. 32-33; Appx. 6, Abel Depo. at 28:10-21; Appx. 61. FieldCore says it didn't have to pay Plaintiffs time and a half for overtime because Plaintiffs were "exempt from the overtime requirements of the FLSA pursuant to the executive, administrative, highly compensated employee, and/or combination exemptions." Doc. 96 at 19, Fifth Affirmative Defense. But all of FieldCore's claimed exemptions require payment on a "salary basis." 29 C.F.R. §§ 541.100(a)(1) (executive); 541.200(a)(1) (administrative); 541.300(a)(1) (professional); 541.601(b)(1) (highly compensated).

FieldCore claims it paid Plaintiffs on a "salary basis." Doc. 195 at 22-25. FieldCore says it paid Plaintiffs a "salary" for the first 40 hours they worked plus "straight-time pay as additional compensation for all hours worked over 40 in a week." *See* Doc. 196-1, FieldCore's Appx. 0017; Appx. 38-40, Bailey Depo. at 13:16-15:12; Appx. 49-52, Abel Depo. at 14:13-17:07. FieldCore's timesheets, paystubs, and other business records produced evidence FieldCore paid Plaintiffs on an hourly (not salary) basis. Plaintiffs' weekly pay varied based on the number of hours they worked. *See, e.g.,* Appx. 28, 30 ("Reality is the Employee receives $48.00 for each hour worked."); Appx. 32-33; Appx. 6, Abel Depo. at 28:10-21; Appx. 61. Plaintiffs' earnings are computed on an hourly basis. *See, e.g.,* Appx. 27-31; Appx. 32-33; Appx. 6, Abel Depo. at 28:10-21; Appx. 61. FieldCore calculated the alleged salary it pays Plaintiffs by multiplying their hourly rate times 40 hours. Appx. 27-31; Appx. 32-33; Appx. 61; *see also* DOL Opinion Letter FLSA 2018-25, 2018 WL 5921453, at *1 (Nov. 8, 2018).

FieldCore claims it always paid Plaintiffs the "weekly salary." Appx. 39-40, Bailey Depo. at 14:15-15:12; Appx. 50-52, Abel Depo. at 15:11-22, 16:15-17:7. FieldCore's payroll records show it did not always pay Plaintiffs the "weekly salary" it claims was guaranteed. Appx. 236 ¶ 8; Doc. 196-3, Appx. 1264; Appx. 63-70; Appx. 140-144. Within the relevant period, Plaintiffs were paid less than their alleged "salaries" twice when they worked less than 40 hours. Appx. 236 ¶ 8. Both instances were improper partial-day deductions. Appx. 236 ¶ 8. And there are more examples of improper deductions pursuant to FieldCore's pay plan for individuals who are involved in other overtime lawsuits complaining about FieldCore's straight-time-for-overtime pay plan. *See, e.g.,* Appx. 63-70, 140-44.

The "weekly salary" FieldCore claims it guaranteed Plaintiffs each week was not reasonably related to Plaintiffs' usual weekly earnings. Appx. 236-37 ¶¶ 9-11; Appx. 239-47, Reasonable Relationship Summary. FieldCore says the reasonable relationship test doesn't apply to them. Doc. 195 at 37-43. FieldCore thought it was enough to pay Plaintiffs "a competitive salary above what the minimum requirements were under the [FLSA]." Appx. 42, Bailey Depo. at 52:7-12. The reasonable

relationship test does apply to straight-time-for-overtime pay schemes like FieldCore's. DOL Opinion Letter FLSA 2018-25, 2018 WL 5921453; *Vaughn v. Wingo Serv. Co., Inc.*, No. 4:20-CV-3915, 2022 WL 4280665, at *1 (S.D. Tex. Aug. 4, 2022), *adopted,* 2022 WL 4277299 (S.D. Tex. Sept. 15, 2022).

FieldCore never analyzed whether Plaintiffs' compensation is subject to the reasonable relationship test. Appx. 41, Bailey Depo. at 51:12-14; Appx. 55, Abel Depo. at 72:6-14; Appx. 11-12, Abel Depo. at 73:24-74:10. Nor did it analyze whether Plaintiffs' compensation satisfied the reasonable relationship test. Appx. 41, Bailey Depo. at 51:12-14; Appx. 55, Abel Depo. at 72:6-14; Appx. 11-12, Abel Depo. at 73:24-74:10. FieldCore knows that it fails the reasonable relationship test if the ratio of Plaintiffs' usual compensation to guaranteed compensation exceeds 1.5 to 1. Appx. 53-54, Abel Depo. at 24:15-25:3. Plaintiffs' actual earnings exceeded the legally permissible ratio of 1.5-to-1 in more than 42% of workweeks within the three-year statute of limitations (386 out of 911 weeks) and 45% of workweeks within the two-year statute of limitations (303 out of 666 weeks). Appx. 237 ¶ 11; Appx. 239-47, Reasonable Relationship Summary. FieldCore knows Plaintiffs' compensation does not satisfy the reasonable relationship test. Appx. 55-57, Abel Depo. at 72:3-74:8. That's why it doesn't even try to say Plaintiffs' pay satisfies the reasonable relationship test. *See generally,* Doc. 195.

Plaintiffs' "primary job duties were to ensure all employees were acting in accordance with [FieldCore's] and clients' training and policies and procedures." Doc. 196-1, Appx. 0037 at 106:4-10, Appx. 0038 A-B at 111:24-112:4, Appx. 0039 at 116:15-25. In other words, their primary job duties were simply to ensure compliance with existing FieldCore and governmental policies. *See, e.g.,* Appx. 150-51, 153-55, Farmer Depo. at 10:6-17, 11:1-8, 40:1-6, 41:24-42:5. Plaintiffs weren't allowed to make decisions independent of established FieldCore and governmental policies and procedures. They just "ensur[ed] everybody [was] following the regulatory boards like OSHA." Appx. 156, Farmer Depo. at 136:12-16. That's why their job only required a high school diploma/GED with at least four years of experience. Doc. 195 at 31 (quoting Doc. 196, Appx. 0053).

D.   **SUMMARY JUDGMENT STANDARD.**

Summary judgment can only be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Ryder v. Union Pac. R.R. Co.,* 945 F.3d 194, 199 (5th Cir. 2019). "In reviewing whether there be a genuine dispute of material fact, the court is to 'consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence.'" *Ryder,* 945 F.3d at 199 (quoting *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008)). "Instead, [the Court] must read all evidence in the light most favorable to the nonmoving party and likewise draw all reasonable inferences in that party's favor." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "If there be any genuine dispute of material fact that a trier of fact may reasonably resolve in favor of either party, then summary judgment must be denied." *Id.* (citing *Anderson*, 477 U.S. at 255).

E.   **THE FLSA APPLIES THE SAME TO ALL EMPLOYEES, EVEN THOSE HIGHLY PAID.**

FieldCore says "the FLSA wasn't intended to protect highly paid employees like Greinstein." Doc. 195 at 20. Hogwash. "Congress has repeatedly rejected efforts to categorically exempt all highly paid employees from overtime requirements." *Hewitt III,* 15 F.4th at 290 (citing 84 Cong. Rec. 5458–59 (1939); H.R. 8624, 76th Cong. (1940); 143 Cong. Rec. E317-04, E318, 1997 WL 79643, at *2 (Feb. 26, 1997)). "Accordingly, both the Secretary of Labor and the Supreme Court—as well as [the Fifth Circuit]—have observed that 'employees are not to be deprived of the benefits of the [FLSA] simply because they are well paid.'" *Id.* (citing *Jewell Ridge Coal Corp. v. Local No. 6167*, 325 U.S. 161, 167 (1945); *Parrish v. Premier Directional Drilling*, 917 F.3d 369, 388 (5th Cir. 2019); 69 Fed. Reg. 22,122-01 (2004).

**F.      GREINSTEIN WAS NEVER A "HIGHLY COMPENSATED EMPLOYEE."**

Throughout its briefing, FieldCore insists Greinstein earned "total annualized compensation … well beyond $100,000." *See, e.g.,* Doc. 194 at 1. It spins that yarn in the hopes of taking advantage of the relaxed "duties" test applicable to "highly compensated employees." 29 C.F.R § 541.601 (the "HCE test"). However, FieldCore's claim that it paid Greinstein enough to meet the "total annual compensation" requirement is just flat out false.

"Total annual compensation" is computed "based upon the number of weeks that the employee will be or has been employed." 29 C.F.R. § 541.601(b)(3). In other words, the "pro rata" calculation takes the total amount of non-discretionary pay as its numerator, and the "number of weeks … employed" as the denominator. *Id.* FieldCore however, did not calculate Greinstein's "total annual compensation … based on the number of weeks … [he was] employed," but rather based on the number of weeks Greinstein "worked." Doc. 195 at 6 n.7. By improperly lowering the denominator, FieldCore dramatically overstated Greinstein's average weekly earnings and hence artificially inflated his alleged "total annual compensation." And it applied this same flawed analysis to other Plaintiffs as well.

Under the required calculation, Greinstein **did not** qualify for the HCE test in either 2016 or 2017. FieldCore admits Greinstein was "employed" continuously from August 22, 2016 to September 22, 2017. Doc. 196-1 at Appx. 0004-05 ((PageID 3473-3474).  In 2016, Greinstein was "employed" for 18 weeks and 6 days (August 22nd to December 31st). Doc. 196-1, FieldCore's Appx. 0004 (PageID 3473). His total W-2 earnings (including any discretionary pay) were $30,378.80. Doc. 196-1, FieldCore's Appx. 0136. Even rounding down to 18 weeks, this equates to $1,687.71 a week ($30,378.80 / 18 weeks), or **$87,760.92** ($1,687.71 x 52 weeks) on an "annualized basis. 29 C.F.R. § 541.601(b)(3).

In 2017, Greinstein was "employed" for 37 weeks and 6 days (January 1st to September 22nd). Doc. 196-1, FieldCore's Appx. 0004-5 ¶ 16 (PageID 3473-74). His total W-2 earnings (including any discretionary pay) were $51,073.70. Doc. 196-1, FieldCore's Appx. 0141, 0148. Even rounding down to 37 weeks, this equates to $1,380.37 a week ($51,073.70 / 37 weeks), or **$71,779.24** ($1,380.32 x 52 weeks) on an "annualized basis. 29 C.F.R. § 541.601(b)(3).

While FieldCore prattles on about how "generously" it paid Greinstein, the reality is FieldCore only paid him when he worked. In the weeks FieldCore permitted Greinstein to work, he usually worked a lot and, as a result, made a decent amount of money. But in those weeks when FieldCore did not assign him work, he earned nothing. And as FieldCore admits, it left him at home (without pay) for weeks at a time—treating him decidedly more like a "wage earner" than a "salaried" employee. *Hewitt III*, 15 F.4th at 291 ("[W]e typically associate the concept of 'salary' with the stability and security of a **regular** weekly, monthly, or annual pay structure. By contrast, we do not ordinarily think of … hourly wage earners—whose pay is subject to the vicissitudes of business needs and market conditions—as 'salaried' employees.") (emphasis added). In any event, FieldCore cannot seek shelter under the HCE test for Greinstein's work.

## G.     FIELDCORE DIDN'T PAY PLAINTIFFS ON A "SALARY" BASIS.

The FLSA requires employers pay their employees time and a half for all hours worked after 40 in a workweek. 29 U.S.C. § 207(a)(1). FieldCore claims Plaintiffs are exempt "pursuant to one or more exemptions, including the highly compensated employee, executive, administrative, professional, and combination exemptions." Doc. 96 at 19. But for that to be true, FieldCore must prove it paid Plaintiffs on a "salary basis." *See* 29 C.F.R. §§ 541.100(a)(1) (executive); 541.200(a)(1) (administrative); 541.601(b)(1) (highly compensated). And "the regulations apply the same salary-basis requirement to all four exemptions." *Hewitt III*, 15 F.4th at 290.

Plaintiffs aren't exempt because FieldCore didn't pay them on a salary basis. It paid them the same hourly rate for all hours worked—including those over 40 hours in a workweek. Appx. 27-31; Appx. 32-33; Appx. 51, Abel Depo. at 16:9-11 ("Q. But the premium rate is essentially the hourly rate for what FieldCore considers a salary, correct? A. Yes."). Appx. 6, Abel Depo. at 28:10-21; Appx. 61. FieldCore's "straight time for overtime" pay practice "clearly violates the FLSA overtime provisions." *Bishop*, 740 F. Supp. at 1226. That's true even if FieldCore's hourly pay system could qualify as a salary (and it cannot) because FieldCore took improper deductions from Plaintiffs' "salaries" "demonstrat[ing] that [it] did not intend to pay [Plaintiffs] on a salary basis." 29 C.F.R. § 541.603(a); Appx. 236 ¶ 8. What's more, FieldCore fails the "salary basis test" because Plaintiffs' usual weekly earnings were not reasonably related to their "salary." 29 C.F.R. § 541.604(b); Appx. 236-37 ¶¶ 9-11; Appx. 239-47, Reasonable Relationship Summary.

The Court should deny FieldCore's motion for summary judgment because there is a fact question whether FieldCore paid Plaintiffs on a "salary basis."

**1.     The "Salary Basis" Test.**

"As a matter of common parlance, we typically associate the concept of 'salary' with the stability and security of a regular weekly, monthly, or annual pay structure." *Hewitt III,* 15 F.4th at 291. With that backdrop, the FLSA's "salary basis" test requires an employer guarantee employees "a predetermined amount" that it will pay "**without regard to the number of days or hours worked**[.]" 29 C.F.R. § 541.602(a) (emphasis added). Labeling part of an employee's compensation a "salary" doesn't make it a salary. *Parrish,* 917 F.3d at 388; *see also Real v. Driscoll Strawberry Assoc., Inc.,* 603 F.2d 748, 755 (9th Cir.1979). And the "salary guarantee" cannot be so small in comparison to an employee's time-based pay to be merely "an illusion." *Hewitt III*, 15 F.4th at 294; *Claridge Hotel & Casino,* 846 F.2d at 183-185.

The DOL and the *en banc* Fifth Circuit confirmed the salary basis test is met only if the worker "receive[s] a guaranteed weekly salary of at least the standard salary level **and** a reasonable relationship exists between the guaranteed amount and the amount actually earned." *Id.* at 293-94; DOL Opinion Letter FLSA 2018-25, 2018 WL 5921453, at *1 (Nov. 8, 2018). When an employer pays a "salary" plus "additional compensation" in the form of hourly pay (that is, a "minimum guarantee plus extras"), the guaranteed salary must bear a "reasonable relationship" to the amount "actually earned." 29 C.F.R. § 541.604(b); *Hewitt III*, 15 F.4th at 294.

### 2.    FieldCore Paid Plaintiffs on an Hourly (Not Salary) Basis.

Again, labels do not control under the FLSA. *Parrish,* 917 F.3d at 388; *Real,* 603 F.2d at 755. Reality controls. *Id.*; *Bartels v. Birmingham,* 332 U.S. 126, 130 (1947); *Goldberg v. Whitaker House Coop., Inc.,* 366 U.S. 28, 33 (1961); *Aimable v. Long & Scott Farms, Inc.,* 20 F.3d 434, 439 (11th Cir. 1994)). So while FieldCore called part of Plaintiffs' pay a "salary" (Doc. 196-1, FieldCore's Appx. 0017; Appx. 38-40, Bailey Depo. at 13:16-15:12; Appx. 49-52, Abel Depo. at 14:13-17:07), that isn't enough. Reality shows Plaintiffs' pay varied with the number of hours they worked. Appx. 27-31; Appx. 32-33; Appx. 6, Abel Depo. at 28:10-21; Appx. 61.

For example, FieldCore says it paid Greinstein a $1,800 weekly "salary" plus "$45 per hour for all hours worked over 40 in a work week." Doc. 196-1, FieldCore's Appx. 0017. But Greinstein was also paid $45 per hour for those hours he worked under 40 in a work week ($1,800 ÷ 40 = $45). So the economic reality of Greinstein's pay is that he received $45 per hour for each hour worked.

| **Check Date** | **ST Comp.** | **ST Hours** | **ST Rate** | **OT Comp.** | **OT Hours** | **OT Rate** |
|---|---|---|---|---|---|---|
| 09/09/2016 | $1,800.00 | 40 | $45.00 | $675.00 | 15 | $45.00 |
| 09/16/2016 | $1,800.00 | 40 | $45.00 | $630.00 | 14 | $45.00 |
| 09/23/2016 | $1,800.00 | 40 | $45.00 | $1,372.50 | 30.5 | $45.00 |

Doc. 196-1, FieldCore's Appx. 0074-76. It isn't an accident Greinstein was paid the same hourly rate for each hour worked because FieldCore never intended to pay Greinstein (or any of the Plaintiffs)

on a salary basis. It intended to pay Plaintiffs on an hourly basis (and did).

Even the "salary" FieldCore says it pays is just Plaintiffs' hourly rate times 40 hours. Appx. 27-31; Appx. 32-33; Appx. 61. FieldCore's management repeatedly admits its pay plan is *intended* to pay Plaintiffs the same hourly rate for each hour worked. *See e.g.,* Appx. 27-31 (James Peeples, FieldCore's Resource Manager Site Safety Professionals, says "Reality is the Employee receives $48.00 for each hour worked."); Appx. 32-33 (Lucy Moncada, FieldCore HR Manager, explaining how FieldCore's pay plan intends to pay Plaintiffs the same hourly rate for each hour worked); Appx. 6, Abel Depo. at 28:17-21 (Bella Abel, FieldCore's HR Director, confirms the intent of FieldCore's pay plan is that Plaintiffs receive the same hourly rate for all hours worked.); Appx. 61 (Michael Scott, FieldCore Resource Manager, says "Hourly pay rate for all hours worked: $54.67").

FieldCore paid Plaintiffs **with regard** to the number of hours they worked, not without regard. *Cf.* 29 C.F.R. § 541.602(a); *Hewitt III,* 15 F.4th at 294. An employer fails the "salary basis" test when its compensation scheme evidences a "pervasive manipulation of payments that makes a 'sham' of what purports to be a salary," such as where the employee's pay fluctuates "on a cyclical basis, in direct correlation with the number of hours worked." *In re Wal-Mart Stores, Inc.,* 395 F.3d 1177, 1188-89 (10th Cir. 2005). "Just as dressing a mannequin up in a skirt and blouse does not transform it into a woman, so too masquerading an hourly employee's compensation as a guaranteed salary plus hour-based bonuses does not transform the compensation scheme into a salary-based plan." *Claridge Hotel & Casino,* 846 F.2d at 183. Where wages vary based on hours worked, the "salary basis" test isn't met. *See Bongat v. Fairview Nursing Care Ctr., Inc.,* 341 F. Supp. 2d 181, 185 (E.D.N.Y. 2004).

FieldCore paid Plaintiffs on an hourly (not salary) basis. For that reason alone, the Court should deny FieldCore's motion for summary judgment. But FieldCore's exemption defenses fail for other reasons too.

### 3.   FieldCore Didn't Guarantee Its Alleged Salary.

FieldCore says "[t]he compensation plan under which Greinstein was paid plainly met the salary basis test." Doc. 195 at 22. To support that claim, it says "Greinstein received his salary each week in which he performed any work, whether he worked 70 hours, 40 hours, or 1 hour." *Id.* (citing Doc. 196-1, FieldCore's Appx. 0070-0135 [Greinstein's Paystubs]). But a review of those paystubs says otherwise. FieldCore claims it paid Greinstein his full salary even if he only worked one hour in a week. But each time one of Greinstein's paystubs says "1.000" on the "Salary" line, he also was paid for "Straight OVT." *See, e.g.,* Doc. 196-1, FieldCore's Appx. 73, 124, 129, 131, 132. Based on Greinstein's paystubs, a reasonable jury could find he was not paid his full salary for only one hour of work in those weeks, but because he actually worked at least 40 hours (actually more) in those weeks.

The fact is FieldCore, on multiple occasions, paid its workers less than their allegedly guaranteed "salary" when they worked less than 40 hours. Appx. 63-70, 140-144. And "[a]n employer who makes improper deductions from a salary **shall lose** the exemption if the facts demonstrate that the employer did not intend to pay employees on a salary basis. An **actual practice** of making improper deductions demonstrates that the employer did not intend to pay employees on a salary basis." 29 C.F.R. § 541.603(a) (emphasis added).

The inquiry isn't limited to whether a particular worker personally experienced an improper deduction, but also to whether they were "subject to" improper deductions. 29 C.F.R. § 541.602(a). Even employees who don't personally suffer an improper deduction have valid claims if the employer has an "actual practice" of making improper deductions. 69 Fed. Reg. 22122-01, at *22180 (Final Rule – 2004); *see also* 29 C.F.R. § 541.603(b); *Fetrow- Fox v. Harrah's Entm't Inc.,* No. 2:10-CV-560-RLH, 2011 WL 5827199, at *3 (D. Nev. Nov. 18, 2011); *Ergo v. Int'l Merch. Servs., Inc.*, 519 F. Supp. 2d 765, 770 (N.D. Ill. 2007).

Plaintiffs were subject to improper deductions because FieldCore has no way of verifying Plaintiffs' "salaries" were not subject to improper deductions when they worked less than 40 hours.

```
 9            MR. DUNLAP:  Well, I guess if FieldCore was
10       going to go back and look, and they saw that an
11       individual received only 32 hours of pay for a week,
12       it -- how would FieldCore go about determining
13       whether or not that 32 hours was paid properly or if
14       there was improper deduction?
15            MR. LI:  Objection to form.
16            THE WITNESS:  We'd have to investigate the
17       matter.
```

Appx. 7, Abel Depo. at 32:9-17.[1] That's because FieldCore's pay policy isn't built around paying Plaintiffs a salary at all. It's built on an hourly rate and the expectation that Plaintiffs will work more than 40 hours each week. Appx. 8-10, Abel Depo. at 33:15-35:14. FieldCore's work is cyclical. *Id.* It only assigns Plaintiffs work during the "peak seasons." *Id.* During the "lulls," Plaintiffs don't work and—consistent with employees who are paid based on the time they work—don't get paid. *Id.* So it's not surprising Plaintiffs rarely worked less than 40 hours. Appx. 237 ¶ 12. But "[i]t cannot be said that merely because an employee was expected to work a certain number of hours per week that he always did so." *Retail Store Emp. Union, Local 400 v. Drug Fair-Cmty. Drug Co.,* 307 F. Supp. 473, 479 (D.D.C 1969). "Nor can it be said that because an employee was expected to work a certain schedule that he was in any sense **guaranteed** a certain compensation." *Id.* (emphasis added).

FieldCore admits employees paid on a salary basis should **never** be paid less than their full "salary" and claims FieldCore's "systems are programmed to pay full-week salary for any hour worked

---

[1] Abel is FieldCore's HR Director and was designated as its corporate representative. Appx. 15, Abel Depo. at 80:22-24; Appx. 164-86.

during that week." Appx. 7, Abel Depo. 32:23-33:3. Abel says that's true even for the first and last weeks worked by a Plaintiff. Appx. 8, Abel Depo. 33:4-13.

Moreover, there are several examples where Plaintiffs (and other FieldCore employees subject to the same pay plan) were paid less than their alleged salaries in weeks where they didn't work the "expected" number of hours. *See, e.g.,* Appx. 63-70. How does FieldCore explain why employees paid under its Retainer B salary plan got paid less than their alleged "salary" in weeks they worked? *See e.g.,* Appx. 63-70; Appx. 140-144. It doesn't (because it can't).  *See e.g.,* Appx. 16-20, Abel Depo. at 131:23-132:9; 142:21-143:2 (admitting FieldCore's pay plan doesn't guarantee Plaintiffs will "receive their full salary in every week that they perform work."), 143:4-9 ("Q. So individuals subject to the Retainer B salary pay plan have a potential to receive less than their full salary in certain weeks under the Retainer B salary pay plan; isn't that correct?" Answer: "In those examples, yes."), 143:17 ("I don't know what caused it."), 143:24-144:4 ("Q. If those individuals in those instances did not receive their full salary, it is possible that other individuals subject to the same pay policy could have also not received their full salary; isn't that possible?" Answer: "Potentially possible."). Vanessa Johnson couldn't explain it either (despite Abel testifying that she could). Appx. 21, Abel Depo. at 145:22-146:3; *see e.g.,* Appx. 200, Johnson Depo. at 69:16-21. Nor could Wadsworth, FieldCore's representative on "[t]he justification for any deductions from PLAINTIFFS' and EHS WORKERS' purported salary[.]" Appx. 78, 88; *see also* Appx. 106-110, Wadsworth Depo. at 111:17-115:22.

Even FieldCore's motion for summary judgment contradicts FieldCore's claim that its "systems are programmed to pay full-week salary for any hour worked during that week." Appx. 7, Abel Depo. 32:23-33:3. Far from being guaranteed the full salary for even an hour of work, FieldCore's summary judgment states Plaintiffs were "required to record at least 40 hours … so that [they] would be paid the weekly salary." Doc. 196-1 at PageID 3243. That's because FieldCore maintain hourly "systems," not salaried ones.

A reasonable jury could find that FieldCore's misrepresentation of how its system worked, and its failure to implement a system to ensure Plaintiffs received their "salaries," fails the salary basis test (particularly since its plan in fact resulted in "deductions" from Plaintiffs' alleged "salaries"). *See e.g.,* Appx. 63-70; Appx. 140-144. FieldCore fails the salary basis test because it "did not intend to pay employees on a salary basis." 29 C.F.R. § 541.603(a).

### 4.      FieldCore Also Fails the "Reasonable Relationship" Test.

FieldCore knows it fails the reasonable relationship test. Appx. 53-54, 55-57, Abel Depo at 24:15-25:3, 72:3-74:8; *see also* Appx. 236-37 ¶¶ 8-11; Appx. 239-47, Reasonable Relationship Summary. That's not surprising since it never analyzed whether Plaintiffs' pay satisfied the reasonable relationship test. Appx. 41, Bailey Depo. at 51:12-14; Appx. 55, Abel Depo. at 72:6-14; Appx. 11-12, Abel Depo. at 73:24-74:10. FieldCore says the reasonable relationship doesn't apply because (1) Greinstein's pay was computed on a weekly basis; and (2) Plaintiffs are highly compensated. Doc. 195 at 37-43. They are wrong because the reasonable relationship test applies to all salaries. *See* DOL Opinion Letter FLSA 2018-25, 2018 WL 5921453. What's more, Plaintiffs' earnings **are computed on an hourly basis**. *See, e.g.,* Appx. 27-31; Appx. 32-33; Appx. 6, Abel Depo. at 28:10-21; Appx. 61. Thus, the reasonable relationship test applies. And FieldCore fails it.

### a.      The Reasonable Relationship Test.

To qualify as a *bona fide* "salary," the "guaranteed amount" must be "reasonably related" to compensation "actually earned." 29 C.F.R. § 541.604(b); *Hewitt III*, 15 F.4th at 293-94. That is, the "weekly salary guarantee" must be "roughly equivalent to the employee's usual earnings at the assigned hourly … rate for the employee's normal scheduled workweek." *Id.* The DOL found a "1.5-to-1 ratio of actual earnings to guaranteed weekly salary is a 'reasonable relationship' under the regulations." DOL Opinion Letter FLSA 2018-25, 2018 WL 5921453, at *2 (citing 29 C.F.R. § 541.604(b)); *Hewitt III*, 15 F.4th at 300 (Ho, J., concurring); *see also* Dep't of Labor, *Defining and Delimiting the Exemptions for*

*Executive, Administrative, Professional, Outside Sales and Computer Employees*, 69 Fed. Reg. 22122, 22184 (Apr. 23, 2004) ("if a nurse whose actual compensation is determined on a shift or hourly basis usually earns $1,200 per week, the amount guaranteed must be roughly equivalent to $1,200."). Administrations of all political persuasions have confirmed for decades that a "salary" amounting to a fraction of a normal week's pay isn't enough. *See* DOL Opinion Letter FLSA 2018-25, 2018 WL 5921453, at *2 (employees who usually work 53 hours a week aren't paid on a "salary basis" if their alleged "weekly guarantee" is only 30 hours of pay); Appx. 155-56, DOL Opinion Letter FLSA 437 (May 7, 1993) (employees who typically work 42 hours a week aren't paid on a "salary basis" if the alleged "guarantee" is just 20 hours of pay).

When it issued the relevant regulations in 2004, the DOL explained why the reasonable-relationship test in § 541.604 was a necessary component of the salary basis test. Section 541.604(b) "incorporates in the regulation Wage and Hour's long-standing interpretation of the existing salary basis regulation, which is set forth in the agency's Field Operations Handbook and in opinion letters." *See* Dept. of Labor, Wage & Hour Div., *Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees*, 69 FR 22122-01 (April 23, 2004) (discussing 29 C.F.R. § 541.604(b)).

Without it, "employees could routinely receive weekly pay of $1,500 or more and yet be guaranteed only the minimum required $455 (thus effectively allowing the employer to dock the employee for partial day absences)." 69 Fed. Reg. 22,184. "Such a pay system would be inconsistent with the salary basis concept and the salary guarantee would be nothing more than an illusion." *Id.* (emphasis added); *Claridge Hotel & Casino*, 846 F.2d at 185 (an employee is not paid on a "salary basis" if "the employee's usual weekly income" calculated on an hourly basis "far exceeds the 'salary' guarantee" the employer provided); *Hewitt III*, 15 F.4th at 294 (same).

      **b.**     **The Reasonable Relationship Test Applies.**

      **i.**     **The Reasonable Relationship Test applies to highly compensated employees.**

FieldCore says the reasonable relationship test doesn't apply to highly compensated employees. Doc. 195 at 39-43. But the "regulations apply the same salary-basis requirement to all four exemptions," including the so-called Highly Compensated Exemption (HCE).[2] *Hewitt III*, 15 F.4th at 290-91. And "an employee is not paid on a 'salary basis' if the employee's usual weekly income calculated on an hourly basis far exceeds the 'salary' guarantee[.]" *Id.* at 294.

There "is no principled basis for applying or ignoring § 541.604(b) based on how much the employee is paid." *Id.* at 297. Certainly nothing in 29 C.F.R. § 541.604(b) carves the HCE Test out from its requirements. Instead, the "Salary Requirement" regulations fit together as a whole. They establish salary levels for the "standalone" exemptions (29 C.F.R. § 541.600) and the HCE Test (29 C.F.R. § 541.601), the "salary basis" test's "general rule" (29 C.F.R. § 541.602), the impact of deductions (29 C.F.R. § 541.603), the impact of additional pay (29 C.F.R. § 541.604), explain what constitutes a "fee basis" (29 C.F.R. § 541.605) as well as what kind of payments count towards salary payments (29 C.F.R. § 541.606). Section 541.604 even says it describes how paying a "minimum guarantee plus extras" interacts with Section 541.602. *See* 29 C.F.R. § 541.604 (explaining when an "exempt employee's earnings may be computed on an hourly, daily, or a shift basis[] without…violating the salary basis requirement.").

Despite this, FieldCore wants the Court to ignore 29 C.F.R. § 541.604(b) in cases involving highly compensated employees. Doc. 195 at 39-43. The DOL, as well as the Fifth, Sixth, and Eighth

---

[2] Technically, there is no "highly compensated employee exemption." Congress authorized exemptions for employees "employed in a bona fide executive, administrative, or professional capacity[,]" but not a "highly compensated exemption." *See* 29 U.S.C. § 213(a)(1). The HCE Test is just "a less burdensome way to prove an executive, administrative, or professional exemption, not a separate exemption." *Coates v. Dassault Falcon Jet Corp.*, 961 F.3d 1039, 1042 n.2 (8th Cir. 2020).

Circuits all disagree with FieldCore's proposal to ignore part of the regulations. *See* DOL Opinion Letter FLSA 2018-25, 2018 WL 5921453, at *2 (confirming § 541.604 applied to employees making more than $100,000 a year, finding "[u]sual earnings of $3,761 [or $195,572 a year], materially exceed a 1.5-to-1 ratio and are not 'roughly equivalent' to the guaranteed weekly salary of $2,100 [equal to $109,200 a year]."); *Hewitt III*, 15 F.4th at 292; *Hughes v. Gulf Interstate Field Servs., Inc.*, 878 F.3d 183, 189 (6th Cir. 2017); *Coates*, 961 F.3d at 1042. FieldCore relies primarily on *Anani v. CVS RX Services, Inc.*, 730 F.3d 146, 149 (2d Cir. 2013) and *Litz v. Saint Consulting Group, Inc.*, 772 F.3d 1, 5 (1st Cir. 2014), but those cases do not control and are distinguishable.

First, in *Litz* and *Anani*, the plaintiffs were paid weekly salaries covering a full 40-hour workweek regardless of the number of hours, days, or shifts worked. *Litz*, 772 F.3d at 2; *Anani*, 730 F.3d at 148. In other words, "the situations in which [*Litz* and *Anani* chose to] ignore § 541.604(b) are situations in which the textual requirements of 29 C.F.R. §§ 541.601, 541.602(a) are already clearly met." *Hughes*, 878 F.3d at 189. That's not true here. FieldCore paid Plaintiffs on an hourly basis. *See* Section E(2), *supra*. And FieldCore's alleged "salary" covered far less than a full week of Plaintiffs' usual compensation and varied directly with the number of hours worked. (Appx. 236-37 ¶¶ 8-11; Appx. 239-47, Reasonable Relationship Summary).

In *Anani*, the plaintiff was an exempt professional employee (a pharmacist) who received a guaranteed weekly base salary, based on a 44-hour week, that always exceeded $1,250. *Anani*, 730 F.3d at 147. When the plaintiff worked more than 44 hours (i.e., beyond the normal, 40-hour workweek), CVS paid him extra based on an hourly rate calculated by dividing his weekly salary by 44 hours. *Id.* Thus, the additional "straight time" pay was for hours worked "beyond the normal workweek[.]" 29 C.F.R. § 541.604(a) ("the exemption is not lost **if** an exempt employee who is guaranteed at least $684 [or $455] each week paid on a salary basis also receives additional compensation based on hours worked for work **beyond the normal workweek**. Such additional compensation may be paid on any

basis [e.g., ... straight time[.]") (emphasis added). Here, Plaintiffs' "guaranteed salaries" were based on a fraction of the normal workweek. *See* Appx. 236-37 ¶¶ 8-12. Unlike *Anani*, who received an hourly compensation **in addition to** his base salary, FieldCore's "[r]eality is the Employee received [the same hourly rate] for each hour worked." Appx. 28, 30.

     *Litz* is even less applicable. First, in *Litz* neither party relied on 29 C.F.R. § 541.604. 772 F.3d at 5 ("Saint Consulting does not rely on that exemption" and "plaintiffs do not take a position on this issue"). Second, the "reasonable relationship requirement applies only if the employee's pay is computed on an hourly, daily or shift basis." 29 C.F.R. § 541.604(b). "It does not apply" to an employee who "receives a commission[.]" *Id.* In *Litz*, the plaintiffs were project managers with guaranteed weekly salaries of $1,000 who received additional pay based on certain types of billable work at a rate of $40-60 for those hours. *Litz*, 772 F.3d at 2. The district court made a factual determination that the plaintiffs' additional compensation was commission based. *Litz v. Saint Consulting Grp., Inc.*, 2013 WL 5205868, at *2 (D. Mass. Sept. 13, 2013). The plaintiffs didn't challenge that finding on appeal. *Litz*, 772 F.3d at 5. Because the additional compensation was "not computed on the basis of hours worked," the payment plan fell outside of 29 C.F.R. § 541.604(b) altogether. *Litz*, 2013 WL 5205868, at *2.

     In dicta, *Litz* quoted a portion of *Anani* purporting to reject the application of 29 C.F.R. § 541.604 to highly compensated employees. However, in *Litz* and *Anani*—regardless of dicta concerning 29 C.F.R. § 541.604 *generally* and not the reasonable relationship test *specifically*—the employers' practices **complied** with 29 C.F.R. § 541.604. *See Hewitt III*, 15 F.4th at 297; *Hughes*, 878 F.3d at 189. Accordingly, there is no conflict between the application of the "reasonable relationship" test to highly compensated employees and the **outcomes** in *Litz* and *Anani*. *Hewitt III*, 15 F.4th at 297.

     If there is ambiguity about whether § 541.604 applies, the DOL's interpretation is controlling. *Auer v. Robbins*, 519 U.S. 452, 461 (1997) ("Because the salary-basis test is a creature of the Secretary's own regulations, his interpretation of it is...controlling unless 'plainly erroneous or inconsistent with

the regulation.'") (cites omitted). So, if the DOL's own interpretation of the statute is reasonable and "based upon a permissible construction of the statute," it will be upheld. *Id.* "Courts grant an agency's interpretation of its own regulations *considerable* legal leeway." *Barnhart v. Walton*, 535 U.S. 212, 217 (2002). So even if FieldCore's position is also a reasonable reading of the salary basis requirements, the Department's views control.

On November 8, 2018, the DOL addressed "whether a guaranteed weekly salary for a professional employee has a 'reasonable relationship' with his or her 'usual earnings' for purposes of determining whether the employee is paid a salary under 29 C.F.R § 541.604(b)." *See* DOL Opinion Letter FLSA 2018-25, 2018 WL 5921453 at *1. The employees at issue were highly compensated engineers who received a guaranteed weekly salary of $2,100 derived by multiplying $70 by 30 hours, the minimum workweek, plus $70 for each additional hour worked over 30 hours. DOL Opinion Letter FLSA 2018-25, 2018 WL 5921453 at *1. Some individuals earned $3,761 a week. *Id.* On an annual basis, this amounts to more than $195,000, more than the "total annual compensation" required to qualify for the HCE Test (then $100,000, now $107,432). *See* 29 C.F.R. § 541.601(a)(1).

In determining whether the highly compensated engineers met the "salary basis" test, the DOL reiterated "a 1.5-to-1 ratio of actual earnings to guaranteed weekly salary is a 'reasonable relationship' under the regulations." DOL Opinion Letter FLSA 2018-25, 2018 WL 5921453, at *2 (citing 29 C.F.R. § 541.604(b)). The DOL found "[u]sual earnings of $3,761, however, materially exceed a 1.5-to-1 ratio and are not 'roughly equivalent' to the guaranteed weekly salary of $2,100." *Id.* The DOL thus confirmed § 541.604 applied to employees making more than $100,000 a year. *Id.* The fact the DOL specifically analyzed the professional exemption is immaterial since all the white-collar exemptions contain the same "salary basis" requirement. *Hewitt III*, 15 F.4th at 290-91.

The Fifth, Sixth, and Eight Circuits agree with the DOL's interpretation. *Id.* at 290 ("Accordingly, both the Secretary of Labor and the Supreme Court—as well as our court—have

observed that 'employees are not to be deprived of the benefits of the [FLSA] simply because they are well paid.'"); *Hughes*, 878 F.3d at 189; *Coates*, 961 F.3d at 1042 ("Courts must rely on these regulations . . . 'when ruling on the potentially ambiguous concept of intent to pay a salary.'") (citing *Ellis v. J.R.'s Country Stores, Inc.,* 779 F.3d 1184, 1199 (10th Cir. 2015)). The reasonable relationship test applies under the HCE Test.

> ### ii. The Reasonable Relationship Test applies to all employees paid additional compensation above their purported guarantee.

FieldCore relies on *Trottier v. FieldCore Services Solutions, LLC et al.,* 2022 WL 658765, at *7-8 (N.D. Tex. Mar. 4, 2022) to say the reasonable relationship test doesn't apply in this case because it "applies only to an exempt employee whose earnings are 'computed on an hourly, a daily, or a shift basis.'" Doc. 195 at 37 (quoting *Trottier,* 2022 WL 658765, at *7). Respectfully, in *Trottier*, the Court incorrectly focused on *how often* an employee is paid instead of how his pay is *calculated*. *Trottier,* 2022 WL 658765, at *7 ("That is not the case here: Defendant pays Plaintiff weekly.").[3]

Regardless of *how often* Plaintiffs received their paychecks, there is a fact question as to whether Plaintiffs' pay was *calculated* on an hourly basis. FieldCore can't avoid the reasonable relationship test by saying Plaintiffs' "predetermined… weekly salar[ies were] not dependent upon, or related in any way, to the amount of time he worked." Doc. 195 at 38. If that were so, the test would say "an exempt employee's **minimum guarantee** may be computed on an hourly, a daily or a shift basis… ." But that's not what it says. It says "[a]n employee's **earnings** [not just the minimum guarantee] may be computed on an hourly, a daily or a shift basis… ." 29 C.F.R. § 541.604(b). And the record is clear (or there is at least a fact question) that Plaintiffs' earnings are computed on an hourly basis. *See, e.g.,* Appx. 27-31; Appx. 32-33; Appx. 6, Abel Depo. at 28:10-21; Appx. 61; *see also* Section E(2), *supra*. FieldCore

---

[3] To focus on when the pay is received is, respectfully, the incorrect lens. "Hourly" employees are not paid at the end of each hour. "Piece rate" employees are not typically paid immediately upon the completion of each piece. The question is what is the "basis" on which they are paid.

admits the "[r]eality is the Employee receives $48.00 for each hour worked." Appx. 28, 30. Even Plaintiffs' purported "salary" is computed by multiplying their hourly rate times 40 hours. Appx. 32-33; Appx. 61. Even if the evidence doesn't conclusively establish Plaintiffs' pay was *calculated* on an hourly basis (and it does), there is a fact question that precludes summary judgment.

That fact question is what distinguishes this case from *Venable v. Schlumberger Ltd.*, 2022 WL 895447, at *5 (W.D. La. Mar. 25, 2022). In *Venable*, there was no dispute that Plaintiffs' pay was *calculated* by dividing their "annual salary" by the number of pay periods. *Id.* In this case, not only is it disputed, but evidence expressly shows Plaintiffs' "salaries" were computed by multiplying their hourly rate times 40 hours. *See, e.g.,* Appx. 27-31 (e.g., "$1920.00 based on $48.00 x 40 hours a week") ; Appx. 32-33; Appx. 6, Abel Depo. at 28:10-21; Appx. 61; *see also* Section E(2), *supra*. *Litvinova v. City & Cnty. of San Francisco,* is similarly inapplicable. No. 18-cv-01494-RS, 2022 WL 2902020, at *4 n.7 (N.D. Cal. July 15, 2022). Like *Venable*, the evidence in *Litvinova* was that Plaintiffs' "compensation [was]determined on an annual basis, and then converted into an hourly rate pay for convenience with the City's payroll software." *Id.* at *4. But again, the evidence in this case is that Plaintiffs' "salaries" were computed by multiplying their hourly rate time 40 hours. *See, e.g.,* Appx. 27-31; Appx. 32-33; Appx. 6, Abel Depo. at 28:10-21; Appx. 61; *see also* Section E(2), *supra*.

This case is more like *Vaughn*, 2022 WL 4280665, at *3, because the plaintiffs' earnings were computed based on an hourly rate. *See, e.g.,* Appx. 27-31; Appx. 32-33; Appx. 6, Abel Depo. at 28:10-21; Appx. 61. Even the Plaintiffs' offer letters acknowledge their pay is calculated on an hourly basis. *See, e.g.,* Doc. 196-1, Appx. 0016 ("Additionally, you will be eligible for a rate of $45.00 per hour for all hours worked over 40 in a work week."). Again, the reasonable relationship test "compares the exempt employee's **actual earnings** to his/her guaranteed weekly salary." *Sonnier v. Recon Mgmt. Servs. Inc.,* No. 2:20-CV-00002, 2022 WL 141779, at *6 (W.D. La. Jan. 14, 2022) (emphasis added). So even

if Plaintiffs' "salaries" were calculated on an annualized basis (and they weren't), the fact Plaintiffs' **earnings** include (at a minimum) an hourly component implicates the reasonable relationship test.

If that weren't enough, according to the DOL, pay plans like FieldCore's are subject to the reasonable relationship test. *See* DOL Opinion Letter FLSA 2018-25, 2018 WL 5921453 at *1. On November 8, 2018, the DOL addressed "whether a guaranteed weekly salary for a professional employee has a 'reasonable relationship' with his or her 'usual earnings' for purposes of determining whether the employee is paid a salary under 29 C.F.R § 541.604(b)." *Id.* The employees at issue received a "guaranteed weekly salary" of $2,100 derived by multiplying $70 by 30 hours, the minimum workweek, plus $70 for each additional hour worked over 30 hours. *Id.* Assuming Plaintiffs in this case were guaranteed a salary at all, they were paid the same way. Each Plaintiffs' purported salary was derived by multiplying their hourly rate by 40 hours.

> **RETB exempt**
> **Weekly Salary** in any weeks where work is performed
> **$1920.00 based on $48.00hrX40 hours** a week = 99,840
> Reality is the Employee receives $48.00 for each hour worked. If the employee works 40 or less for that week, he still receives $1920.00 a week. If no hours are worked there is no pay for the week.

Appx. 28. And they would be paid that same hourly rate for all hours worked over 40. Appx. 27-31; Appx. 32-33; Appx. 6, Abel Depo. at 28:10-21; Appx. 61.

In other words, the DOL applied the reasonable relationship test to a straight-time-for-overtime pay scheme just like the one at issue in this case. If the reasonable relationship doesn't apply at all (as FieldCore claims), the DOL would have said so. But it didn't. It confirmed straight-time-for-overtime pay plans like FieldCore's must satisfy the reasonable relationship test or there is no exemption. *See* DOL Opinion Letter FLSA 2018-25, 2018 WL 5921453.

### c.  FieldCore Fails the Reasonable Relationship Test.

FieldCore admits it didn't design Plaintiffs' pay plan with the reasonable relationship test in mind. Appx. 42, Bailey Depo. at 52:7-12. It admits there was never any analysis or audit as to whether

the reasonable relationship test was satisfied. Appx. 41, Bailey Depo. at 51:12-14; Appx. 55, Abel Depo. at 72:6-14; Appx. 11-12, Abel Depo. at 73:24-74:10. And FieldCore admits Plaintiffs' pay was not reasonably related to their usual earnings. Appx. 53-57, Abel Depo. at 24:15-25:3, 72:3-74:8.

But to be sure, Plaintiffs' "usual earnings"—based on the hours actually worked—far exceeded their alleged "salary." Appx. 236-37 ¶¶ 8-11; Appx. 239-47, Reasonable Relationship Summary. Recall that a "1.5-to-1 ratio of actual earnings to guaranteed weekly salary is a 'reasonable relationship' under the regulations." DOL Opinion Letter FLSA 2018-25, 2018 WL 5921453, at *2 (citing 29 C.F.R. § 541.604(b)). Plaintiffs' actual earnings exceeded the legally permissible ratio of 1.5-to-1 in more than 42% of workweeks within the three-year statute of limitations (386 weeks) and 45% of workweeks within the two-year statute of limitations (303 weeks). Appx. 237 ¶ 11; Appx. 239-47, Reasonable Relationship Summary. And on several occasions, Plaintiffs' actual earnings **far exceeded** 1.5-to-1. *See, e.g.,* Appx. 242 (Speer's ratio exceeded 3-to-1 16 times); Appx. 245 (Cancienne's ratio exceeded 4-to-1 4 times). And earnings that are "close to double" "the guaranteed weekly salary materially exceed the permissible ratios … and are not roughly equivalent to that salary under § 541.604(b)." DOL Opinion Letter FLSA 2018-25, 2018 WL 5921453, at *2.

As a result, FieldCore's alleged "salaries" were not reasonably related to Plaintiffs' usual earnings. 29 C.F.R. § 541.604(b).

## H.   THERE ARE FACT ISSUES REGARDING PLAINTIFFS' DUTIES.[4]

To begin, FieldCore has no evidence Plaintiffs' actual job duties meet the requirements for any of its claimed exemptions. Its corporate representative—Wadsworth—admitted FieldCore doesn't "maintain a record as to which exemptions [they] contend[] actually apply to the job positions." Appx. 101-2, Wadsworth Deposition at 54:21-55:9. Which is why FieldCore doesn't know which duties it relies upon to satisfy the duties test. Appx. 111, Wadsworth Deposition at 156:18-21; Appx. 22-23

---

[4] FieldCore doesn't claim Plaintiffs performed exempt executive duties. Doc. 195 at 25-37.

Abel Deposition at 149:10-150:1. What's more, FieldCore isn't "aware of any time studies [it performed] to determine whether or not the duties performed were exempt or non-exempt." Appx. 113, Wadsworth Deposition at 158:4-10. Those admissions, made by FieldCore's corporate representative on their behalf, clearly and plainly show FieldCore has no evidence that Plaintiffs' actual job duties meet the requirements for any of its claimed exemptions. So it is trying to use Plaintiffs' deposition testimony to satisfy the duties test. *See* Doc. 195 at 25-37. But at best, Plaintiffs' deposition testimony only creates a fact question.

### 1.    Plaintiffs Don't Satisfy the Administrative Exemption Duties Test.

Plaintiffs are only exempt administrative employees if their primary duty "includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(3). FieldCore says Plaintiffs "exercised discretion and independent judgment" because their jobs included "implementing FieldCore safety policies and programs, managing safety-related processes and compliance activities, analyzing and investigating safety incidents or 'near miss' events, identifying remedial or corrective safety measures, conducting inspections and audits, and conferring with site management about safety-related issues." Doc. 195 at 29. Even if Plaintiffs' jobs "included" those tasks (and there is certainly a fact question whether they did), there is no evidence these tasks were Plaintiffs' "primary duty."

Greinstein said Plaintiffs' "ultimate job duty was to prevent onsite accidents." Doc. 196-1, Appx. 0039 at 116:19-20. Said differently, Plaintiffs' "primary job duties were to ensure all employees were acting in accordance with [FieldCore's] and clients' training and policies and procedures." *Id.*, Appx. 0037 at 106:4-10, Appx. 0038 A-B at 111:24-112:4, Appx. 0039 at 116:15-25 ("to ensure compliance with environmental, health, and safety factors, programs and procedures of [FieldCore] and the government."). Other Plaintiffs confirmed their primary job duties were simply to ensure compliance with existing FieldCore and governmental policies. *See, e.g.,* Appx. 150-51, 153-55, Farmer

Depo. at 10:6-17, 11:1-8 ("it was just doing safety for the construction of that wind farm; same thing, making sure they were following the OSHA regulations and their own company policies, their employees, that is."), 40:1-6 (site safety setup is controlled by FieldCore's handbook), 41:24-42:5 ("my priority was the emergency response plan, making sure the OSHA regulations were followed, and making sure no one got hurt."). Plaintiffs didn't "manage" anything in the sense that they were allowed to make decisions independent of established FieldCore and governmental policies and procedures. Plaintiffs "manage[d] their required compliance activities" merely by "ensuring everybody is following the regulatory boards like OSHA." Appx. 156, Farmer Depo. at 136:12-16. And didn't even "[a]nalyz[e] root causes to determine safety measures to prevent future incidents and influence the implementation of corrective actions." *Cf.* Doc. 195 at 27. "Analyzing the root causes is a manager's job ... [Plaintiffs] would assist with the investigation, and help develop the ... system you use to get to the root cause. But ... the actual analyzing of that root cause ... is entirely up to a manager, not up to an EHS specialist" like Plaintiffs. Appx. 157, Farmer Depo. at 137:11-25.

Plaintiffs' primary duty (as described by Plaintiffs, the only evidence available) didn't include the exercise of discretion and independent judgment. "In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a). "The exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision." *Id.* at § 541.202(c). Plaintiffs' work was akin to "inspection work [that] generally does not meet the duties requirements for the administrative exemption." 29 C.F.R. § 541.203(g). Plaintiffs weren't free to make decisions. They may have had "some leeway in the performance of their work but only within closely prescribed limits" as defined by FieldCore and governmental policies and procedures. 29 C.F.R. § 541.203(g); *see* Appx. 156, Farmer Depo. at 136:12-16. Thus, there is at least a fact question whether

Plaintiffs' primary duty included the exercise of discretion and independent judgment. Summary judgment is not appropriate under the administrative exemption.

### 2.    EHS Specialists Are Not "Learned Professionals."

FieldCore claims Greinstein, who has no degree beyond a high school diploma, should be held to be an exempt, learned professional. Doc. 195 at 30-31 (PageID 3442-3443). This would require FieldCore to prove EHS Specialists are employed in a "bona fide professional capacity." 29 U.S.C. § 213(a)(1). So in addition to proving it paid on "salary basis," FieldCore must prove the EHS Specialist's "primary duty" was performing work requiring advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized knowledge or instruction. 29 C.F.R. § 541.300. The primary duty element requires:

(1) the employee must perform work requiring advanced knowledge;

(2) the advanced knowledge must be in a field of science and learning; and

(3) the advanced knowledge must be customarily acquired by a prolonged course of specialized intellectual instruction.

29 C.F.R. § 541.301(a).

The professional exemption is limited to positions where a standard prerequisite for the job requires specialized academic training. 29 C.F.R. § 541.301(d). It does no apply where most employees acquired their skill through experience rather than advanced specialized intellectual instruction. *Clark v. Centene Co. of Texas, L.P.*, 656 F. App'x 688, 693 (5th Cir. 2016) (licensed vocational nurses are not "professionals" under the FLSA). Even if some employees have more advanced degrees or certifications, "the Court's focus in analyzing the availability of the learned professional exemption is on the minimum requirements for the job." *Clark v. Centene Co. of Texas, L.P.*, 44 F. Supp. 3d 674, 679 (W.D. Tex. 2014), aff'd, 656 F. App'x 688 (5th Cir. 2016); *see also Dybach v. Fla. Dep't of Corrs.*, 942 F.2d

1562, 1565 (11th Cir. 1991) ("[T]he determinative factor is the job requirement and not the education in fact acquired by the employee.").

Being an EHS Specialist requires nothing more than a high school diploma, it does not require "a prolonged course of specialized intellectual instruction." Compare Doc. 196-1 at PageID 3524. In other words, FieldCore does not require EHS Specialists have any degree much less a particular academic degree. Doc. 196-1, FieldCore's Appx. 0053, Greinstein Depo. at 138:4-12; *see also* Doc. 195 at 31. To the contrary, even a GED is sufficient. *Id.* So it should be clear that EHS Specialists "do not receive sufficient academic instruction to qualify as exempt learned professionals." *Clark*, 656 F. App'x at 693 (citing 29 C.F.R. § 541.301(e)(2)). FieldCore "nevertheless contends that the additional [four] years of experience required … distinguishes" its EHS Specialists." *Id.* But as the Fifth Circuit noted, the governing regulations "explicitly rejected the relevance of experience to the analysis[,]" therefore the "additional experience required to become [an EHS Specialist is] immaterial." *Id.*

FieldCore citation to *Owsley v. San Antonio Indep. Sch. Dist.*, 187 F.3d 521 (5th Cir. 1999) borders on fraudulent. FieldCore says *Owsley* held "that athletic trainers subject to a 'fifteen credit-hours' requirement satisfied 'the 'learned' prong of the professional exemption[.]" Doc. 195 at 30 (PageID 3442). But as the Fifth Circuit itself has explained, *Owsley* held the "athletic trainers satisfied the education requirement of the professional exemption because they were required to obtain (1) a bachelor's degree in any field; (2) 1800 hours of apprenticeship over a three-year period; (3) complete five 3–hour credit college courses in human health, anatomy, and physiology; and (4) pass a C.P.R. test." *Clark*, 656 F. App'x at 694 (citing *Owsley*, 187 F.3d at 524–25). Moreover, the Fifth Circuit has rejected the notion that "558 hours of classroom instruction, 840 hours of clinical practice, and two to three years of additional clinical experience" was sufficient to qualify workers as "learned professionals." *Id.*

31

Even if "Greinstein is an expert on OSHA standards and regulations," Doc. 195 at 31, (which he doesn't concede), the job doesn't **require** "advanced knowledge, defined as work which is predominantly intellectual in character." Neither Greinstein nor any other EHS Specialist is employed as a "learned professional."

### 3.     FieldCore Misstates, and Cannot Satisfy, the "Combination" Exemption.

FieldCore says "even if Greinstein's duties hypothetically didn't fully satisfy the administrative exemption or professional exemption, he is still exempt because, considered all together, his duties qualify for the combination exemption." Doc. 195 at 32. If FieldCore is suggesting the "combination" allows it to mix and match from the various exemptions without meeting **all** the requirements for each, FieldCore is clearly wrong.

"Section 541.600 allows the 'tacking' of exemptions only where (1) an employee performs more than one type of work that would be exempt except that (2) neither type of work alone can be termed the employee's primary duty, but (3) all of the putatively exempt work taken together constitutes the employee's primary duty." *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1232 (5th Cir. 1990). Both courts, and the Department of Labor, have flatly rejected the argument that the "combination exemption creates a new and independent exemption for any employee whose job duties represent a hybrid of the individual exemptions, regardless of whether the other requirements of those individual exemptions are satisfied." *IntraComm, Inc. v. Bajaj*, 492 F.3d 285, 294, 206 (4th Cir. 2007) (collecting cases). Therefore, the combination exemption "does not relieve the employees of independently establishing the requirements of each exemption that is claimed[.]" *Villegas v. Dependable Const. Servs., Inc.*, No. CIV. 4:07-CV-2165, 2008 WL 5137321, at *20 (S.D. Tex. Dec. 8, 2008).

Therefore, FieldCore must "fully satisfy" all the requirements of both the administrative and professional exemptions to benefit from the "combination exemption." It cannot pick one duty from column A and another from column B to "cobble" together a wholly new exemption. *IntraComm, Inc.*,

492 F.3d at 294; *Dalheim*, 918 F.2d at 1232; *Villegas*, 2008 WL 5137321, at *20. As discussed herein, there are fact issues whether Plaintiffs *ever* performed "the exempt duties or responsibilities of an … administrative or professional employee." *See* §§ H(1) & (2), *supra*. Because FieldCore cannot prove all the elements of the administrative and professional exemptions, it—by definition—cannot prevail on summary judgment with respect to the "combination exemption." *Id.*

### 4.       Plaintiffs Don't Satisfy the HCE Exemption Duties Test.

As noted above, Greinstein **cannot** be exempt as a "highly compensated employee" because he never earned anything close to $100,000 a year on an annualized basis. *See* § F, *supra*. Greinstein's *highest* total annual compensation was less than $88,000. *Id.*

Even the few Plaintiffs who *might* meet the "total annual compensation" requirement (recall, FieldCore applied the same flawed formula to other Plaintiffs as well) were not paid on a salary basis. Moreover, those Plaintiffs are not exempt under the HCE exemption unless they "customarily and regularly perform[] any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee." 29 C.F.R. § 541.601(a)(1). But—despite bearing the burden of proof—FieldCore makes no effort to show these Plaintiffs (Farmer, Flores, Jones, and White) "customarily and regularly" performed exempt work. *See* Doc. 195 at 12-14; 29 C.F.R. § 541.701 ("Tasks or work performed 'customarily and regularly' includes work normally and recurrently performed every workweek; it does not include isolated or one-time tasks."). There are fact issues as to how often, if *ever*, Plaintiffs performed "the exempt duties or responsibilities of an … administrative or professional employee." *Id.*; *See* §§ G(1) & (2), *supra*. So there are certainly fact issues whether Plaintiffs *customarily and regularly* performed those duties. FieldCore is not entitled to summary judgment with respect to the four allegedly "HCE" employees.

I.      THE DOL's "SALARY BASIS" REGULATIONS ARE PERMITTED AND CONTROLLING.

FieldCore says "the FLSA precludes a regulation that requires overtime pay for a bona fide executive, administrative, or professional employee based on how the employee's compensation is computed." Doc. 195 at 46-47. In other words, FieldCore asks this Court to disregard all DOL regulations applying the "salary basis" test to its claimed exemptions. *Id.* It says the "salary basis" regulations aren't allowed because the text of the FLSA is silent as to a "salary basis" component. *Id.* But that's not how *Chevron* deference works.

"The power of an administrative agency to administer a congressionally created ... program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,* 467 U.S. 837, 843 (1984) (citing *Morton v. Ruiz,* 415 U.S. 199, 231 (1974)). "If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation." *Id.* at 843-44. "Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 844; *see also Belt v. EmCare, Inc.,* 351 F. Supp. 2d 625, 627 (E.D. Tex. 2005), *aff'd and remanded,* 444 F.3d 403 (5th Cir. 2006) ("If Congress expressly delegates authority to an agency to interpret a specific statutory provision through regulations, a court must give controlling weight to the agency's interpretations unless they are 'arbitrary, capricious, or manifestly contrary to the statute.'").

"The FLSA grants the Secretary broad authority to define and delimit the scope of the exemption for executive, administrative, and professional employees." *Auer v. Robbins*, 519 U.S. 452, 456 (1997) (cleaned up, citing 29 U.S.C. § 213(a)(1)). "Under the Secretary's chosen approach, exempt status requires that the employee be paid on a salary basis[.]" *Id.* So courts "must sustain the Secretary's approach so long as it is based on a permissible construction of the statute." *Id.* (cleaned up). In keeping with this deferential approach, the Fifth Circuit found the salary requirements valid. *See Wirtz*

34

*v. Mississippi Publishers Corp.*, 364 F.2d 603, 608 (5th Cir. 1966) ("The statute gives the Secretary broad latitude to 'define and delimit' the meaning of the term 'bona fide … [professional] capacity.' We cannot say that the minimum salary requirement is arbitrary or capricious.").

Thus, not only can the DOL promulgate "salary basis" regulations, the Court "cannot … intrude upon the [DOL's] 'construction of [the FLSA] it is entrusted to administer'" "'unless they are arbitrary, capricious, or manifestly contrary to the [FLSA].'" *Alavar v. Trican Well Serv., L.P.,* 397 F. Supp. 3d 873, 890 (W.D. Tex. 2019) (quoting *Chevron,* 467 U.S. at 843–44). Again, that's because "[w]here Congress has specifically delegated to an agency the power to make rules to fill gaps in a statute, the rules developed by the agency are entitled to great deference—they are 'binding in the courts unless procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute.'" *In re Texas EZPawn Fair Lab. Standards Act Litig.,* 633 F. Supp. 2d 395, 403 (W.D. Tex. 2008) (quoting *U.S. v. Mead Corp.,* 533 U.S. 218, 227 (2001)); *see also Gonzales v. Oregon,* 546 U.S. 243, 255–56 (2006) ("Deference in accordance with *Chevron,* however, is warranted … 'when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority.'") (quoting *Mead Corp.,* 533 U.S. at 226–227).

The DOL's "salary basis" regulations are not procedurally defective, arbitrary, or capricious in substance, or manifestly contrary to the statute, so they are permitted. And controlling.

## J.    THERE IS A FACT QUESTION WHETHER FIELDCORE WILLFULLY VIOLATED THE FLSA.

FieldCore says "Greinstein's claim is limited by a two-year limitations period because he cannot prove that Defendants violated the FLSA, much less that they did so willfully." Doc. 195 at 47. Greinstein doesn't have to prove anything to defeat summary judgment. He only needs to "designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex,* 477 U.S. at 325).

35

FieldCore willfully violated the FLSA if it "either 'knew or showed reckless disregard for ... whether its conduct was prohibited by the statute.'" *Singer v. City of Waco,* 324 F.3d 813, 821 (5th Cir.2003) (quoting *Reich v. Bay, Inc.,* 23 F.3d 110, 117 (5th Cir.1994)); *see also McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133 (1988). There are disputed fact issues as to whether FieldCore acted willfully. The evidence shows FieldCore did nothing to ensure it didn't violate the FLSA. Vanessa Johnson— FieldCore's designated corporate representative—is "not specifically aware of any" "evaluations of [the pay policy at issue] to ensure compliance for FLSA purposes." Appx. 192, Johnson Deposition at 37:18-24. Nor is she "aware of any investigations or internal audits regarding [the pay policy at issue] for FLSA compliance purpose." Appx. 192-93, Johnson Deposition at 37:25-38:9. Johnson couldn't confirm whether anyone ever performed any review of FieldCore's exemption classification or FieldCore's compliance with FLSA requirements. Appx. 194-97, Johnson Deposition at 41:24-42:17; 43:05-44:11. Moreover, Johnson—as FieldCore's 30(b)(6) witness—testified she was not aware of anything FieldCore did to ensure FLSA compliance. Appx. 198, Johnson Deposition at 45:12-17. In fact, Johnson doesn't know if FieldCore's pay policy was ever "evaluated for compliance purposes in any way, shape, or form." Appx. 199, Johnson Deposition at 64:11-19.

If that wasn't bad enough, Michael Scott—also designated a FieldCore's corporate representative—"never" "actually looked at the job descriptions and made a determination [it] is an exempt job description for the site safety specialist." Appx. at 214-15, Scott Depo. at 44:23-45:5. Scott doesn't know if FieldCore has any documents that "spell out why [they] classif[y] [their] site safety professionals as exempt." Appx. at 217, Scott Depo. at 106:20-25. Nor has he ever "interviewed plaintiffs to determine whether their job was an exempt or non-exempt job" even though that's exactly what FieldCore designated him to testify on. Appx. at 218, Scott Depo. at 111:9-15; Appx. at 222-33.

FieldCore says it "employed professionals who are well-versed in and have broad knowledge of wage and hour laws" and rely on those individuals to ensure FLSA compliance. Appx. 234. But not

one document shows it ever even attempted to reviewed Plaintiffs' compensation to ensure FLSA compliance. That is a "reckless disregard for ... whether its conduct was prohibited by the [FLSA].'" *Singer,* 324 F.3d at 821. Or at the very least, there is a fact issue. Either way, the Court should deny FieldCore's motion for summary judgment as to willfulness.

**K.   CONCLUSION.**

For the reasons set forth herein, FieldCore's motion for summary judgment should be denied.

Respectfully submitted,

By: */s/ Richard M. Schreiber*
    **Michael A. Josephson**
    Texas Bar No. 24014780
    **Andrew W. Dunlap**
    Texas Bar No. 24078444
    **Richard M. Schreiber**
    Texas Bar No. 24056278
    **JOSEPHSON DUNLAP LLP**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77005
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com
    adunlap@mybackwages.com
    rschreiber@mybackwages.com

    **AND**

    **Richard J. (Rex) Burch**
    Texas Bar No. 24001807
    **BRUCKNER BURCH PLLC**
    11 Greenway Plaza, Suite 3025
    Houston, Texas 77046
    713-877-8788 – Telephone
    710-877-8065 – Facsimile
    rburch@brucknerburch.com

    **AND**

**Channy F. Wood**
Texas Bar No. 00791954
cwood@woodlawfirm-tx.com
**WOOD LAW FIRM, LLP**
Physical: 610 S.W. 11th Avenue (79101)
Mailing: P.O. Box 1439
Amarillo, Texas 79105-1439
Telephone: 806.372.9663
Facsimile: 806.372.9664

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served by ECF electronic filing on all known parties on this the 10th day of January, 2023.

/s/ Richard M. Schreiber
**Richard M. Schreiber**